*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0054P (6th Cir.)
File Name: 04a0054p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

HENRY DICARLO,
    *Plaintiff-Appellant,*

    *v.*

JOHN E. POTTER, Postmaster
General,
    *Defendant-Appellee.*

No. 02-4010

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 01-01072—Dan A. Polster, District Judge.

Argued: December 5, 2003

Decided and Filed: February 20, 2004

Before: KENNEDY, MARTIN, and MOORE, Circuit
Judges.

———————

## COUNSEL

**ARGUED:** David A. Van Gaasbeek, North Canton, Ohio,
for Appellant. Kathleen L. Midian, ASSISTANT UNITED
STATES ATTORNEY, Cleveland, Ohio, for Appellee.
**ON BRIEF:** David A. Van Gaasbeek, North Canton, Ohio,

for Appellant. Kathleen L. Midian, ASSISTANT UNITED
STATES ATTORNEY, Cleveland, Ohio, for Appellee.

    MOORE, J., delivered the opinion of the court, in which
MARTIN, J., joined. KENNEDY, J. (pp. 24-26), delivered a
separate opinion concurring in part and dissenting in part.

———————

## OPINION

———————

    KAREN NELSON MOORE, Circuit Judge. Plaintiff-
Appellant Henry DiCarlo ("DiCarlo") appeals the district
court's grant of summary judgment in favor of Defendant-
Appellee John Potter,[1] Postmaster General ("Postal Service"),
DiCarlo's former employer. DiCarlo was terminated near the
end of his probationary employment period for what the
Postal Service asserted as unsatisfactory work performance.
DiCarlo alleges that he was terminated on the basis of
national origin, age, and disability discrimination. He also
asserts that his termination was in retaliation for the Equal
Employment Opportunity ("EEO") complaint he filed. The
district court granted summary judgment in favor of the
Postal Service on all four of DiCarlo's claims, concluding that
he had failed to meet his burden of proof on any of them.

    Because there are genuine issues of material fact as to
DiCarlo's claims of national origin discrimination, age
discrimination, and retaliation, we **REVERSE** the district
court's grant of summary judgment on these claims, and
**REMAND** for further proceedings consistent with this
opinion. Additionally, because DiCarlo cannot establish a

———————

[1]The original complaint was filed naming William J. Henderson,
Postmaster General of the United States Postal Service, as the defendant.
However, pursuant to Fed. R. Civ. P. 25(d), John E. Potter, the current
Postmaster General, was substituted as the defendant in the present action.

disability, we **AFFIRM** the district court's grant of summary judgment on DiCarlo's disability discrimination claim.

## I. BACKGROUND

### A. Factual Background

DiCarlo applied for and obtained a part-time flexible ("PTF") mail processor position with the United States Postal Service on September 25, 1999. The employment had been contingent on DiCarlo passing a drug screening and medical evaluation. As part of the evaluation, DiCarlo was provided a document, which he signed, outlining the "functional requirements" the mail processor position would entail. It included walking for two hours, standing for eight hours, and repeated bending, and it stressed that *both legs* were required for the job. Additionally, DiCarlo confirmed in writing that he had no medical condition for which he was currently receiving treatment and further attested to the fact that "[t]o the best of [his] knowledge, [he] d[id] not have any medical condition." Joint Appendix ("J.A.") at 84. After a complete medical assessment conducted by the Postal Service, it was concluded that DiCarlo had no medical limitations or restrictions, and that he was "medically qualified to perform the functions of the position."[2] J.A. at 85. DiCarlo was assigned to the Canton, Ohio Main Post Office, to begin work on January 15, 2000.

---

[2] DiCarlo claims that in his job application, which was supplemented by two letters from the Department of Veterans Affairs, he informed the Postal Service about a physical disability he had involving his left leg. He further alleges that during his orientation for his position with the Postal Service, he informed the woman leading the orientation about his leg, telling her that he would need "to rest the leg at intervals and that the leg stiffening was unpredictable," to which she informed him that he "could do the job and that [he] should let the supervisor on duty at the time [know] that [he] needed a rest." Joint Appendix ("J.A.") at 172A (DiCarlo Aff.).

As a new employee, the first ninety days of DiCarlo's employment were deemed a "probationary period." Under this agreement, the Postal Service reserved the right to terminate DiCarlo's employment at any point during the probationary period, which termination would not be subject to the grievance procedure. DiCarlo commenced his employment on January 15, 2000, and was placed under the direct supervision of Timothy Bailey ("Bailey"). Bailey would remain DiCarlo's supervisor until DiCarlo's termination on March 30, 2000. Bailey evaluated DiCarlo throughout his probationary period and generated contemporaneous notes of his work performance. These notes demonstrate that Bailey viewed DiCarlo's on-the-job performance as below standard.[3] DiCarlo appeared to be negatively reviewed on a rather consistent basis throughout the probationary period.[4] DiCarlo disputes these

---

[3] Bailey's general comments about DiCarlo were that he lacked enthusiasm about his job, and that his performance fell below the standard to which Bailey held the other employees. Bailey also noted that DiCarlo criticized Bailey about how he ran his operation. Finally, Bailey recorded the following: "Mr. DiCarlo did not show me or anyone else that he has worked with that he would like to work here. I don't feel that he has wanted to learn the job, or be here. He has projected the image to me and the other employees that he is only to show up and get paid. He doesn't want to pull his own load in the operations. I will not keep Mr. DiCarlo as a PTF. He has not shown the dedication to his job . . . ." J.A. at 140.

[4] The following are some of the entries made by Bailey about DiCarlo:

(1) "Jan 18, 2000: I had to give Mr. Dicarlo a talk about working as a team and keep moving . . . ."

(2) "Feb 9, 2000: I talked with Mr. Dicarlo about standing and talking, needing to have a sense of urgency, needing to move from one operation to another without having to be told everyday, staying gainfully employed, and keep moving and doing some form of work."

(3) "Feb 14, 2000: I gave his first evaluation (30 day) noting his working slowly, his need for constant supervision, no sense of urgency, and

characterizations by Bailey.[5] Bailey claims that he informed DiCarlo of "his deficiencies, and [DiCarlo] failed to correct the problems," and that he "talked to him repeatedly as well as on his 30 and 60 day evaluation[s]." J.A. at 186. DiCarlo claims that he "was not advised of any work deficiencies prior to [his] termination and [] was never given the opportunity to correct alleged deficiencies." J.A. at 167.

Pursuant to DiCarlo's probationary employee status, he, like others during this period, received three performance evaluations — the first after thirty days, the second after sixty days, and the third after eighty days. In DiCarlo's first evaluation, dated February 14, 2000, out of the six categories evaluated, he received two "unacceptable" ratings and four "satisfactory" ratings.[6] In the second and third evaluations, dated March 15, 2000 and March 30, 2000 respectively, he

---

low work ethics."

   (4)   "March 3, 2000: Mr. Dicarlo had conflict with other employee, not working together, and talking derogatory about other employees."

J.A. at 140.

[5] In particular, DiCarlo states in reaction to Bailey's assertion that he failed to show any effort or that he wanted to work at the Postal Service, that he "showed up for work on every day and worked hard every day," and that he "had to learn the machinery by [himself] because Mr. Bailey or [sic] anyone else failed to train [him] on the machinery." J.A. at 166. He also asserts that contrary to what Bailey said, he did show enthusiasm for his job, in that he "kept asking how [he] could advance in the postal service." J.A. at 166.

[6] DiCarlo received "unacceptable" ratings in the work quantity and dependability categories. DiCarlo asserts that Bailey told him at this time "that everyone gets this type of rating on the first probationary month evaluation and not to worry about it," and that "[Bailey] did not tell [DiCarlo] what [he] was doing wrong." J.A. at 168. Bailey, however, denies having made such statements. We must view all controverted evidence in favor of DiCarlo at the summary-judgment stage.

---

received three "unacceptable" ratings and three "satisfactory" ratings.[7]

During the course of his employment, on March 9, 2000, DiCarlo requested an appointment with an EEO counselor to discuss alleged discriminatory actions taken by Bailey against DiCarlo on the basis of the latter's national origin, age, and disability.[8] Specifically, DiCarlo asserts that he told Bailey on March 8, 2000 that he "had a physical disability[9] and []asked for a rest period because of the problems [he] was having" with the disability. J.A. at 169. DiCarlo alleged that Bailey responded that "he did not care about [DiCarlo's] physical disabilities," and "informed [him] that [he] had better start pushing."[10] J.A. at 169. DiCarlo also asserted that on the same day (March 8, 2000), Bailey informed him that "he was no spring chicken and that [he] would not be a supervisor at the facility because of [his] age."[11] J.A. at 169. Finally,

---

[7] In both the second and third evaluations, DiCarlo received "unacceptable" ratings in the work quantity, dependability, and work relations categories.

[8] Bailey testified in his deposition that although he knew that an EEO complaint had been filed, he did not know that it involved him specifically until after Dicarlo had been terminated.

[9] The disability stemmed from a leg injury he had sustained in 1984 while in the Army. Documentation from the Veteran's Administration Medical Center corroborated the injury, revealing that the injury had resulted in a 20% disability in the left leg.

[10] In DiCarlo's deposition testimony, he provided a similar account, stating that on that day, his left leg had stiffened up by the end of his shift, so he leaned up against a machine for several minutes to relieve it. This is when Bailey allegedly said to him, "I'm tired of you limping around here." J.A. at 112. DiCarlo told him he had a bad leg and that he was a disabled veteran, to which Bailey responded, "I don't care about your disabilities," and "I want you to push, push, push." J.A. at 112.

[11] DiCarlo was forty-six at the time of this alleged incident.

DiCarlo said that Bailey called him a "dirty-wop" and complained that "there were too many dirty wops around [the facility]." J.A. at 169. Bailey denies ever having made any of these comments, and further refutes any allegation that he ever discriminated against DiCarlo in any way.

After meeting with an EEO counselor, both DiCarlo and the Postal Service agreed to mediate the dispute.[12] However, the mediation, which took place on March 29, 2000, failed to result in a settlement. Meanwhile, several days earlier, on March 22, Bailey submitted a memorandum to his manager "requesting [DiCarlo's] removal for failure to meet satisfactory performance levels." J.A. at 107. His manager, Gary Andriotti, agreed with the assessment and therefore approved the proposed termination. A letter was subsequently sent to DiCarlo on March 29, 2000, signed by Bailey, stating that DiCarlo was terminated effective April 1, 2000 due to his "unsatisfactory work performance." J.A. at 109.

On April 13, 2000, DiCarlo withdrew the discrimination complaint he had filed on March 9, 2000. On April 25, 2000, DiCarlo filed a new complaint with the EEO office, alleging discrimination based upon national origin, age, and disability as well as retaliation, and naming Bailey as the alleged responsible discriminating official. The Postal Service proceeded to conduct an investigation into the complaint, and informed DiCarlo of his right to demand a hearing before an administrative judge of the EEO Commission.[13] The Postal Service issued a Final Agency Decision on February 6, 2001, concluding that the evidence failed to establish discrimination on the basis of national origin, age, disability, or retaliation.

---

[12]DiCarlo specifically requested that Bailey have no involvement in the mediation.

[13]DiCarlo never asked for a hearing before an administrative judge of the EEO Commission.

## B. Procedural background

On May 3, 2001, DiCarlo filed suit[14] in district court alleging discrimination on the basis of national origin, age, disability, and retaliation. The Postal Service filed a motion for summary judgment on June 20, 2002, which the district court granted on August 19, 2002. The district court found "none of [DiCarlo's] claims [] sufficient to withstand summary judgment," as DiCarlo had failed to satisfy his burden of proof on every allegation of discrimination and retaliation. J.A. at 259. This appeal followed.

The district court had jurisdiction over DiCarlo's federal claims pursuant to 28 U.S.C. § 1331. We have appellate jurisdiction over the district court's final order pursuant to 28 U.S.C. § 1291.

---

[14]Specifically, the complaint states that the suit was: authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. sec. 2000e et seq, providing for relief from discrimination in employment on the basis of national origin; to the Age Discrimination in Employment Act ["ADEA")], specifically, 29 U.S.C. sec. 633a (c), providing for relief from discrimination in employment on the basis of age; to the Rehabilitation Act of 1973, specifically 29 U.S.C. sec. 794(a), providing for relief from discrimination in employment on the basis of disability; to 29 U.S.C. sec. 623(d), providing relief from retaliation in employment for filing a complaint of discrimination on the basis of age; and, to 42 U.S.C. sec. 2000e-3 providing for relief from retaliation in employment on the basis of filing a complaint of discrimination on the basis of national origin." J.A. at 5-6 (Compl. ¶ 3).

## II. ANALYSIS

### A. The Summary Judgment Standard

This court reviews de novo a grant of summary judgment. *Buckeye Cmty. Hope Found. v. City of Cuyahoga Falls*, 263 F.3d 627, 633 (6th Cir. 2001); *Terry Barr Sales Agency, Inc. v. All-Lock Co.*, 96 F.3d 174, 178 (6th Cir. 1996). "Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). "In deciding upon a motion for summary judgment, we must view the factual evidence and draw all reasonable inferences in favor of the non-moving party." *Nat'l Enters., Inc. v. Smith*, 114 F.3d 561, 563 (6th Cir. 1997). "We examine the grant of summary judgment to determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *C.T. Massey v. Exxon Corp.*, 942 F.2d 340, 342 (6th Cir. 1991) (quoting *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989)).

### B. Title VII Standards

In Title VII actions, "a plaintiff may establish discrimination either by introducing direct evidence of discrimination or by proving inferential and circumstantial evidence which would support an inference of discrimination." *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997). When using circumstantial evidence to create an inference of discrimination, the complainant must carry the initial burden of establishing by a preponderance of the evidence a prima facie case of discrimination by his or her employer. In evaluating a claim of employment discrimination, we employ the burden-shifting approach first

announced in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802 (1973). *See also Vaughn v. Watkins Motor Lines, Inc.*, 291 F.3d 900, 906 (6th Cir. 2002); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). A plaintiff who successfully establishes a prima facie case receives the benefit of a presumption that the employer unlawfully discriminated against him. *Burdine*, 450 U.S. at 254. The burden then "shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.'" *Id*. at 253 (quoting *McDonnell*, 411 U.S. at 802). Finally, "should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* Throughout this shifting burdens framework applicable when circumstantial evidence is involved, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.*; *see also Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1246 (6th Cir. 1995).

The *McDonnell Douglas* burden-shifting framework for circumstantial-evidence cases has been applied in the context of claims brought under the Age Discrimination in Employment Act ("ADEA"), *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003), and the Rehabilitation Act. *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001); *Burns v. City of Columbus Dep't of Pub. Safety*, 91 F.3d 836, 843 (6th Cir. 1996).

### C. National Origin Discrimination Claim

Title VII makes it unlawful for an employer "to . . . discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff who alleges

discrimination on the basis of national origin and wishes to prove a prima facie case through the use of circumstantial evidence must prove four elements: (1) he or she was a member of a protected class; (2) he or she suffered an adverse employment action; (3) he or she was qualified for the position; and (4) he or she was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees. *Talley*, 61 F.3d at 1246.

When proving a claim through the use of direct evidence, a plaintiff does not have to proceed under the *McDonnell Douglas* burden-shifting framework that applies to circumstantial evidence cases. *Christopher v. Stouder Mem'l Hosp.*, 936 F.2d 870, 879 (6th Cir. 1991). "[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). "Consistent with this definition, direct evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003). "[T]he evidence must establish not only that the plaintiff's employer was predisposed to discriminate on the basis of [national origin], but also that the employer acted on that predisposition." *Hein v. All America Plywood Co.*, 232 F.3d 482, 488 (6th Cir. 2000). Finally, "an employee who has presented direct evidence of improper motive does not bear the burden of disproving other possible nonretaliatory reasons for the adverse action. Rather, the burden shifts to the employer to prove by a preponderance of the evidence that it would have made the same decision absent the impermissible motive." *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 382 (6th Cir. 2002).

DiCarlo asserts that the Postal Service discriminated against him on the basis of his Italian-American origin.

Specifically, DiCarlo alleges that Bailey called him a "dirty wop" and complained of there being too many "dirty wops" working at the postal facility. Bailey denies having ever made such comments.

In light of the well-established rule on summary judgment that, when viewing the factual evidence, we must draw all reasonable inferences in favor of DiCarlo, the nonmoving party, all contested facts must be assumed in his favor. Furthermore, although direct evidence generally cannot be based on isolated and ambiguous remarks, *Weigel*, 302 F.3d at 382, when made by an individual with decision-making authority, such remarks become relevant in determining whether there is enough evidence to establish discrimination. *Cf. Carter v. Univ. of Toledo*, 349 F.3d 269, 273 (6th Cir. 2003)("comments made by individuals who are not involved in the decision-making process regarding the plaintiff's employment do not constitute direct evidence of discrimination"); *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 433 (6th Cir. 2002)(comments by manager lacking any involvement in the decision-making process do not constitute direct evidence); *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 354 (6th Cir. 1998) ("isolated discriminatory remark made by one with no managerial authority over the challenged personnel decisions is not considered indicative of [] discrimination").

It is clear that Bailey was an individual with decision-making authority with respect to the decision to terminate DiCarlo. It was Bailey who recommended that DiCarlo be terminated. After thorough discussion with Bailey's manager, Gary Andriotti, who agreed with the recommendation, the decision was made to terminate DiCarlo. This shows that Bailey had decision-making authority with regard to DiCarlo's future at the Postal Service. Hence, Bailey's remarks constitute direct evidence of the requisite discriminatory animus.

After concluding that DiCarlo has pointed to direct evidence of Bailey's discriminatory comments on DiCarlo's national origin, we must next determine whether Bailey terminated DiCarlo because of his predisposition to discriminate on the basis of national origin. *Hein*, 232 F.3d at 488. Very few cases exist to provide guidance on direct-evidence analysis in the arena of employment discrimination. However, *Hein v. All America Plywood Co.*, 232 F.3d 482, is helpful to the analysis of causation. *Hein* involved a 45-year old, 5'8", 200-pound plaintiff employed as a truck driver, who was terminated because he could not make an out-of-town delivery on five-days-advance notice. The plaintiff had explained to his employer that he could not make the delivery because his supply of blood-pressure medication would not have outlasted his return, and he could not arrange to have a prescription filled before the departure date. Hein alleged that his termination constituted discrimination on the basis of his age and weight. To bolster this claim, he presented three pieces of evidence: (1) a sales update sheet (produced and distributed by the company president) "with a cartoon of a reclining Big Boy from the Big Boy restaurant chain, captioned 'Wayne Hein Contemplates Lotto Scheme'"; (2) a magazine cover (hung in the president's office) depicting a gorilla with a caption reading "Wayne Hein Ponders Weight Limits"; and (3) coworkers' use of various nicknames, such as "Burger Boy," "Buffet Boy," "Double Cheese," and "Turtle Hein," in reference to Hein, and the company driver-contact list's reference to Hein as "Buffet Boy." *Id.* at 485.

In assessing this evidence under the direct-evidence analytical framework, we concluded that it "failed to establish a prima facie case of intentional age or weight discrimination because the evidence was neither direct nor credible." *Id.* at 489. Addressing the weight discrimination claim in particular, we noted that although the evidence "might raise a genuine issue of material fact as to [the company president's] predisposition towards weight discrimination, Hein presented no evidence to connect [the president's] alleged prejudice against heavier individuals with his decision

to fire Hein," thereby failing to demonstrate causation. *Id.* This conclusion stemmed, we stressed, from the fact that the sales update sheet and magazine cover were generated more than five months prior to Hein's termination, and there was no evidence to attribute the origin of the nicknames to the company president. *Id.*

We believe the instant case is distinguishable from *Hein* such that the evidence presented successfully demonstrates a genuine issue of material fact whether Bailey's decision to terminate DiCarlo was based on his predisposition to discriminate on the basis of national origin. In particular, the fact that the comments were made by Bailey, DiCarlo's immediate supervisor and a decision-maker, that they specifically negatively and derogatorily referenced DiCarlo's Italian-American heritage, and that the hate-speech occurred three weeks prior to DiCarlo's termination, all culminate in the conclusion that DiCarlo has presented sufficient evidence of causation to withstand summary judgment. Unlike *Hein*, the temporal proximity between the discriminatory act and the termination creates a far different scenario, such that causation may be demonstrated with a lesser quantum of evidence than in other cases not involving such a tight time line of events.

Because we conclude that DiCarlo has presented evidence that Bailey had discriminatory animus against DiCarlo, and that this predisposition to discriminate played a role in the decision to terminate DiCarlo, the plaintiff has successfully established a prima facie case of discrimination on the basis of national origin through the use of direct evidence. Therefore, we need not decide whether DiCarlo could have proven his case through the use of circumstantial evidence. Accordingly, because DiCarlo has created a genuine issue of material fact as to whether he was terminated on the basis of his national origin, we reverse the district court's grant of summary judgment on this claim.

## D.  Age Discrimination Claim

The ADEA prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a).  Where a plaintiff fails to present direct evidence of discrimination, they must prove by a preponderance of the evidence the following four elements:  (1) he or she was forty years old or older at the time of their dismissal; (2) he or she was subjected to an adverse employment action; (3) he or she was qualified for the position; and (4) he or she was replaced by a younger person.  *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1159-60 (6th Cir. 1990).

DiCarlo asserts that the Postal Service discriminated against him on the basis of his age because of statements that he claims were made to him by Bailey.  Specifically, Bailey allegedly told DiCarlo that the latter was "no spring chicken" and that he would never be a supervisor at the postal facility because of his age.  J.A. at 122.  Bailey denies ever having made such statements.

Again, taking all inferences in the light most favorable to DiCarlo, we assume for the purpose of this appeal that Bailey made the age-based comments.  Additionally, as was established under the national-origin discrimination analysis, these remarks constitute direct evidence, as they were made by someone with decision-making authority.

With regard to causation, our discussion above of the *Hein* case and its distinction from this case applies here.  Because of the close proximity between the age-related remarks and DiCarlo's termination, and because the remarks were made by Bailey, someone with decision-making authority, and the comments referenced DiCarlo's age and stated that he would never become a supervisor, DiCarlo has presented sufficient evidence to establish a genuine issue of material fact regarding causation.  Therefore, because DiCarlo has

demonstrated through direct evidence a prima facie case of age discrimination, a genuine issue of material fact exists, and the district court's grant of summary judgment on this claim was erroneous.  We therefore reverse the grant of summary judgment on this claim.  As a result, we need not assess whether DiCarlo could have established a prima facie case of age discrimination through circumstantial evidence.

## E.  Disability Discrimination Claim

The Rehabilitation Act prohibits the United States Postal Service from discriminating against their employees on the basis of a disability. 29 U.S.C. §794(a).  "[I]f the plaintiff has direct evidence that the employer relied on his or her disability in making an adverse employment decision," the plaintiff must prove that he or she is "disabled." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996). On the other hand, "[i]f the plaintiff seeks to establish his or her case indirectly, without direct proof of discrimination, the plaintiff may establish a *prima facie* case of discrimination by showing that:  1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced." *Id.*

"To be 'disabled' for the . . . Rehabilitation Act, an individual must (1) have a physical or mental impairment which 'substantially limits' him or her in at least one 'major life activity,' (2) have a record of such an impairment, or (3) be regarded as having such an impairment." *Mahon v. Crowell*, 295 F.3d 585, 589 (6th Cir. 2002).  "Major life activities" include "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Id.* at 590 (quoting 45 C.F.R. § 84.3(j)(2)(ii)).  It appears that only the first category of disability is at issue in the present case.

DiCarlo asserts that the Postal Service discriminated against him on the basis of his disability by discharging him. However, DiCarlo cannot establish a prima facie case through either direct or circumstantial evidence, because even though he suffered from a knee injury which arguably can be classified as an "impairment," he submits no evidence establishing that this physical impairment substantially limits him in a major life activity, as is required by the Rehabilitation Act. Hence, he cannot demonstrate that he is disabled within the meaning of the Act.

DiCarlo injured his knee in 1984 while in the Army, and as a result, he had to undergo surgery. When evaluated by the Department of Veterans Affairs in June 1996, DiCarlo was noted as having mild osteoarthritis and a twenty-percent leg disability. However, this evidence, by itself, is insufficient to demonstrate that DiCarlo is substantially limited in a major life activity. "[A]ny impairment that only moderately or intermittently prevents an individual from performing major life activities is not a substantial limitation under the Act." *Mahon*, 295 F.3d at 590-91. In *Mahon*, we held that although the plaintiff suffered a back impairment that "cause[d] him distress and limit[ed] him in performing some activities," the evidence he presented did not demonstrate that he was severely restricted in any major life activities. *Id.* at 591. The same is true here, for although DiCarlo clearly suffers from his impairment, it hardly prohibits him from engaging in any major life activities, and no evidence has been submitted demonstrating otherwise.

Indeed, the record indicates that at the time he commenced his Postal Service employment, DiCarlo was perfectly capable of performing his job duties, and that he suffered from no medical conditions at all. Although he indicated on the Postal Service Authorization for Medical Report form that he had had knee surgery, the ultimate outcome of the medical evaluation that was completed before DiCarlo was hired concluded that he had no medical limitations or restrictions, and deemed him "medically qualified to perform the

functions of the position." J.A. at 85. In addition, DiCarlo was given a document detailing the functional requirements of the position for which he was applying, which included daily activities of walking for two hours, standing for eight hours, repeated bending for eight hours, and which stressed that *both legs were required* for the position. He signed this document, attesting that he had no "medical disorder or physical impairment which could interfere in any way with the full performance of duties of the position for which [he was] applying[.]" J.A. at 83.

DiCarlo also signed another document attesting that he had no medical condition for which he was presently being treated (including the past year), and that to the best of his knowledge, he did not have any medical conditions. All of this demonstrates that, by DiCarlo's own admission, he represented to the Postal Service that he did not have any physical or mental impairment that could affect his job performance. Hence, because there is no evidence to support the notion that DiCarlo's knee injury prevents him from engaging in any major life activities, he cannot be found disabled under the Rehabilitation Act. Accordingly, we affirm the district court's grant of summary judgment on this claim.

DiCarlo also asserts that the Postal Service violated the Rehabilitation Act by failing to accommodate his disability.

In order for a plaintiff to prevail on an allegation of handicap discrimination based on failure to accommodate, he must first establish a *prima facie* case by showing that: (1) he is an individual with a handicap . . . ; (2) he is qualified for the position . . . ; (3) the agency was aware of his disability; (4) an accommodation was needed, i.e., a causal relationship existed between the disability and the request for accommodation; and (5) the agency failed to provide the necessary accommodation. Once the plaintiff has presented a *prima facie* case, the burden shifts to the

employer to demonstrate that the employee cannot reasonably be accommodated, because the accommodation would impose an undue hardship on the operation of its programs.

*Gaines v. Runyon*, 107 F.3d 1171, 1175-76 (6th Cir. 1997)(citations omitted).

DiCarlo argues that the Postal Service discriminated against him on the basis of his disability by its failure to accommodate. Specifically, he claims that when he informed Bailey of his disability and the need to rest his leg, Bailey's indifference to his need and refusal to allow him to rest amounted to discrimination on the basis of his disability. Bailey asserted in his deposition that he was never told about DiCarlo's leg disability, and that DiCarlo never asked Bailey for permission to rest his leg. Bailey did concede that DiCarlo had told him about a military disability but stated that DiCarlo never provided him with any specific details. Of course, we view contested facts in the light most favorable to DiCarlo.

Once again, DiCarlo's claim must fail, as successful establishment of a prima facie case of disability discrimination based on a failure to accommodate hinges on the plaintiff's proving that he is disabled under the Act's definition. Because there is no evidence to support the claim that DiCarlo's knee injury prevents him from engaging in any major life activities, he cannot be found disabled under the Rehabilitation Act. Accordingly, we affirm the district court's grant of summary judgment on this claim.

## F. Retaliation Claim

Title VII provides in pertinent part: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified,

assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

Because DiCarlo presents no direct evidence of retaliation, he must prove his claim through the use of circumstantial evidence. "In order to find a *prima facie* case of retaliation under Title VII a plaintiff must prove by a preponderance of the evidence:  1) plaintiff engaged in activity protected by Title VII; 2) plaintiff's exercise of [such protected activity] was known by the defendant; 3) that, thereafter, the defendant took an employment action adverse to the plaintiff; and 4) that there was a causal connection between the protected activity and the adverse employment action." *Equal Employment Opportunity Comm'n v. Avery Dennison Corp.*, 104 F.3d 858, 860 (6th Cir. 1997); *see also Williams v. Nashville Network*, 132 F.3d 1123, 1131 (6th Cir. 1997). "The burden of establishing a *prima facie* case in a retaliation action is not onerous, but one easily met." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). "Once a *prima facie* case is established, the burden of producing some non-discriminatory reason falls upon the defendant." *Williams*, 132 F.3d at 1131. "If the defendant demonstrates such, the plaintiff then assumes the burden of showing that the reasons given by the defendant were a pretext for retaliation." *Id.*

DiCarlo asserts that he was terminated in retaliation for filing an EEO complaint against Bailey. He argues that Bailey was fully aware of DiCarlo's having filed the complaint prior to making the recommendation that DiCarlo be terminated. However, the Postal Service asserts that DiCarlo cannot make out a prima facie case of retaliation because he has produced no evidence that Bailey knew of DiCarlo's protected EEO activity when Bailey recommended DiCarlo's termination, and because he presented no evidence of a causal connection between any prior protected activity and his termination. It is clear that DiCarlo engaged in protected activity, and that he suffered an adverse employment action when he was fired by the Postal Service.

Hence, only the second and fourth elements of the test are at issue.

With regard to the second element, it appears from the record that the Postal Service and Bailey in particular were aware that DiCarlo had engaged in protected activity by filing an EEO complaint. DiCarlo filed his EEO complaint on March 9, 2000, one day after the remarks allegedly made by Bailey on March 8. Subsequently, on March 22, Bailey submitted a memorandum to his manager requesting DiCarlo's removal "for failure to meet satisfactory performance levels . . . ." J.A. at 92. Although Bailey testified that he did not know that DiCarlo's EEO complaint implicated Bailey personally, Bailey admitted that he knew prior to March 22 that DiCarlo had in fact filed an EEO complaint. See J.A. at 207 (Bailey Dep.). Contrary to the assertions of the dissent, Bailey conceded that as of March 11, 2000, he knew that DiCarlo had filed an EEO complaint. Therefore, it is clear that Bailey, as well as the Postal Service, was aware of an EEO complaint having been filed.

With regard to the last element, establishment of a "causal connection" between the protected activity and the adverse employment action, "[a]lthough no one factor is dispositive in establishing a causal connection, evidence . . . that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation." *Nguyen*, 229 F.3d at 563. In fact, this Circuit has embraced the premise that in certain distinct cases where the temporal proximity between the protected activity and the adverse employment action is acutely near in time, that close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise. *See, e.g., Brown v. ASD Computing Ctr.*, 519 F. Supp. 1096, 1116 (S.D. Ohio 1981) ("where there is no direct proof of a retaliatory motive, retaliation may be imputed if the timing of the retaliatory act is such as to allow an inference of retaliation to arise"), *aff'd sub nom. Brown v. Mark*, 709 F.2d 1499 (6th Cir. 1983); *see also Nguyen*, 229 F.3d at 567 (noting that there are instances in which "evidence of

temporal proximity alone would be sufficient to support" an inference of a causal link); *Parnell v. West*, No. 95-2131, 1997 WL 271751, at *3 (6th Cir. May 21, 1997) (noting that although "[a] time lag of seven months does not necessarily support an inference of a causal link[,] previous cases that have permitted a prima facie case to be made based on the proximity of time have all been short periods of time, usually less than six months").

Various of our sister circuits have also accepted this concept. *See, e.g.,Oliver v. Digital Equip. Corp.*, 846 F.2d 103, 110 (1st Cir. 1988) (employee's discharge "soon after" engaging in protected activity "is indirect proof of a causal connection between the firing and the activity because it is strongly suggestive of retaliation"); *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 731 (9th Cir. 1986) ("[c]ausation sufficient to establish a prima facie case of unlawful retaliation may be inferred from the proximity in time between the protected action and the allegedly retaliatory discharge"); *Burrus v. United Tel. Co. of Kansas*, 683 F.2d 339, 343 (10th Cir. 1982) ("causal connection may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action"); *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 46 (2d Cir. 1980) ("proof of causal connection can be established indirectly by showing that protected activity is followed by discriminatory treatment").

DiCarlo filed his EEO complaint on March 9, 2000. Bailey submitted the memorandum recommending DiCarlo's termination on March 22. The termination was carried out on March 30, twenty-one days after DiCarlo engaged in protected activity. In light of our prior precedent, the temporal proximity between the two events is significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive. As a result, DiCarlo has satisfied all the elements necessary to establish a prima facie case, thereby creating a genuine issue of material fact as to whether his termination was effectuated in

retaliation for his filing an EEO complaint. Because the district court did not address the issues of whether a non-discriminatory reason existed to justify DiCarlo's termination, and whether DiCarlo could prove that the given reason was a pretext for retaliation, we need not engage in that analysis here. Accordingly, we reverse the district court's grant of summary judgment on DiCarlo's retaliation claim and remand for further proceedings.

## III. CONCLUSION

For all of the reasons set forth above, we **REVERSE** the district court's grant of summary judgment on DiCarlo's claims of national origin discrimination, age discrimination, and retaliation, and **REMAND** for further proceedings consistent with this opinion. We **AFFIRM** the district court's grant of summary judgment on DiCarlo's disability discrimination claim.

## CONCURRING IN PART, DISSENTING IN PART

KENNEDY, Circuit Judge, concurring in part, and dissenting in part. I agree with the majority that Plaintiff failed to establish that he is disabled and accordingly agree with the decision to affirm the district court's grant of summary judgment on the disability discrimination claim. I also agree that the district court improperly granted summary judgment on the claim of national origin discrimination. However, for reasons explained below, I disagree with the majority's decision to reverse the district court's grant of summary judgment on claims of age discrimination and retaliation.

### A.   Age Discrimination

With regard to direct evidence of intentional age discrimination, the district court noted that the "only evidence that Plaintiff has offered regarding his claim of age discrimination is his own affidavit attesting to the fact that on March 8, 2000, Bailey informed him that 'he was no spring chicken' and that he would not be a supervisor at the facility because of his age." *DiCarlo*, No. 5:01CV1072, slip op. at 9-10. The district court found, and I agree, that this evidence was insufficient to withstand a motion for summary judgment. *Id.* Plaintiff may not establish a *prima facie* case of age discrimination based on vague, ambiguous, or isolated remarks. *Hein*, 232 F.3d at 488 (citing *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020 (6th Cir. 1993) (finding no prima facie case of age discrimination, even though the plaintiff's supervisor twice stated that the plaintiff was too old to continue at her prior secretarial position, because these were only isolated and ambiguous comments)). In the present case, a single remark about Plaintiff's no longer being a "spring chicken" is exactly the type of an isolated remark that is insufficient to establish age discrimination.

Furthermore, to establish a *prima facie* case, Plaintiff must establish "not only that plaintiff's employer was predisposed to discriminate on the basis of age, but also that the employer acted on this predisposition." *Id.* Had he not been *promoted* to a supervisor position, Bailey's alleged remark could have evidenced age discrimination. However, in the present case, Plaintiff was *fired* for substandard performance. Plaintiff simply failed to present *any* direct evidence that his evaluations were motivated by age bias.

With regard to circumstantial evidence of disparate treatment, the district court noted that "'to establish a *prima facie* case of age discrimination..., a plaintiff must prove by preponderance of the evidence that: (1) he was at least 40 years old at the time of the alleged discrimination; (2) he was subjected to an adverse employment action; (3) he was qualified for the position; and (4) he was replaced by a younger person.'" *DiCarlo*, No. 5:01CV1072, slip op. at 10 (citing *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1328 (6th Cir. 1994)). The district court found that Plaintiff failed to show either prong (3) or (4). Although I do not agree that he had to establish prong (4) since apparently he was not replaced by anybody at all, I agree that Plaintiff failed to establish that he was qualified for the position.

## B. Retaliation

The majority asserts that "[a]lthough Bailey testified that he did not know that DiCarlo's EEO complaint implicated Bailey personally, Bailey admitted that he knew prior to March 22 that DiCarlo had in fact filed an EEO complaint." This assertion is not supported by the record.[1] We know that

---

[1] The majority cites to a question that was asked of Bailey at his deposition: "So what you're telling me is that from March the 11th, 2000, to August the 17th, 2000, you only had a passing reference of an E.E.O. complaint being filed against the Postal Service by Henry DiCarlo?" Bailey answered "Right." J.A. at 207. I am unable to determine the significance of the March 11th date from the excerpted deposition

Bailey learned of the complaint at a meeting with Mr. Zernechel and Mr. Andreatti. J.A. at 206. Although we are not provided with the specific date of that meeting, Bailey stated that "[t]he only E.E.O. activity that I knew of was with Mr. Stoltz. And that was after I had already done the paperwork for the removal." J.A. at 216. Having carefully considered the chronology of the events, I cannot come to the conclusion that Bailey's actions were retaliatory. As of March 9, 2000, Judson Zernechel, Rick Stoltz, and Gary Andreatti knew of the filing of the complaint. On March 22, Bailey prepared the proposal to remove Plaintiff from employment. At some point between March 22 and March 29, Bailey learned of the EEO complaint. J.A. at 217 (indicating that he wanted to wait until March 29th to allow Plaintiff to deal with his EEO complaint). On March 29, 2000, the redress hearing ended in a "no agreement" letter. On March 30, 2000, Bailey sent the letter, dated March 29, 2000, to Plaintiff indicating his termination. Based on this chronology, I would find that Bailey recommended that Plaintiff be terminated before he learned of the complaint.[2] In my mind, his decision to issue the formal termination letter after he learned of the complaint is legally irrelevant.

---

provided to this Court by the parties. I understand that the majority reads this exchange to mean that *starting* on March 11, 2000, Bailey knew of the complaint. I, however, read it to mean that *at some point during the period starting* on March 11, 2000, Bailey learned of the complaint. Whether the date that he learned of the complaint is before or after March 22, 2000, is therefore unclear. This reading is consistent with other portions of Bailey's testimony that I describe below.

[2] This conclusion is buttressed by the fact that Plaintiff insisted that the EEO complaint and the mediation were kept private (with the lone exception of Rick Stoltz). Contrary to majority's assertion, Plaintiff has failed to show any evidence that Bailey knew of *any* EEO complaint between March 9, 2000 and March 22, 2000.