*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0212P (6th Cir.)
File Name: 04a0212p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

TERESA TIMM,
　　　*Plaintiff-Appellant,*

　　　*v.*

WRIGHT STATE UNIVERSITY,
et al.,
　　　*Defendants-Appellees.*

No. 03-3371

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 99-00656—Thomas M. Rose, District Judge.

Argued: June 10, 2004

Decided and Filed: July 7, 2004

Before: MARTIN and SUTTON, Circuit Judges;
WILLIAMS, Senior District Judge.[*]

---

[*] The Honorable Glen M. Williams, Senior United States District Judge for the Western District of Virginia, sitting by designation.

---

**COUNSEL**

**ARGUED:** John R. Folkerth, Jr., FOLKERTH & FOLKERTH, Dayton, Ohio, for Appellant. Terence L. Fague, COOLIDGE, WALL, WOMSLEY & LOMBARD CO., Dayton, Ohio, for Appellees. **ON BRIEF:** John R. Folkerth, Jr., FOLKERTH & FOLKERTH, Dayton, Ohio, for Appellant. Terence L. Fague, COOLIDGE, WALL, WOMSLEY & LOMBARD CO., Dayton, Ohio, for Appellees.

---

**OPINION**

---

BOYCE F. MARTIN, JR., Circuit Judge. Plaintiff Teresa Timm filed suit against Wright State University, University Provost Perry Moore, University President Kim Goldenberg, and Janet Gibbs, alleging that the University violated a number of her rights when it terminated her employment in December 1998. The district court granted summary judgment in favor of the defendants on all of Ms. Timm's claims. Ms. Timm appealed, arguing that the district court erred in its judgment on her First Amendment, Rehabilitation Act, and Equal Protection Clause claims. We affirm.

I.

Ms. Gibbs, an employee in the school's business and finance department, hired Ms. Timm as Director of Internal Audit for the University in November 1995. In June 1997, the University promoted Ms. Timm to Assistant Vice President for Business and Financial Services. Ms. Gibbs served as Ms. Timm's immediate supervisor throughout her employment with the University.

After Ms. Timm assumed the role of Assistant Vice President, she and Dr. Susan Lightle compiled a list for Ms. Gibbs of candidates to fill the then-vacant auditor position. In January 1998, Ms. Gibbs hired an Asian man whom Ms. Timm considered less qualified than other candidates she and Dr. Lightle evaluated. Ms. Timm alleges that Ms. Gibbs made her selection solely to diversify the racial makeup of the office, and not because the man was the most qualified for the position. At one point, Ms. Timm confronted Ms. Gibbs about her decision and warned her that her choice could have negative legal ramifications. Ms. Gibbs also reports that Ms. Timm grew increasingly resentful and hostile towards her after the hiring.

In a related dispute, Ms. Gibbs reports that Ms. Timm defied her instructions when she invited candidates for the audit position to a party, where they met one another and mingled with University employees. In addition, Ms. Gibbs alleges that Ms. Timm reported to her who she and Dr. Lightle considered the most qualified for the auditor position after Ms. Gibbs specifically asked her not to reveal their choice to her.

Another rift developed between Ms. Timm and Ms. Gibbs in March 1998 following the death of former University President, Dr. Harley E. Flack. Ms. Timm accused Ms. Gibbs of improperly allocating University funds to cover expenses related to his funeral and the Flack family's move. Ms. Timm reports that two University employees approached her about the allegedly improper expenses, and that both expressed a fear that Ms. Gibbs would retaliate against them if they spoke out. News of the allegedly improper expenditures leaked to the media, and a state auditor was called to review the University's finances in July 1998. The audit found no evidence of impropriety.

On several occasions during the state audit, Ms. Timm directly asked Ms. Gibbs about certain expenditures. Ms. Timm alleges that Ms. Gibbs acted unconcerned and told her

that the state auditor would determine whether any payments were improper. After a number of other University employees approached her about the audit, Ms. Timm gave audit-related documents to Mr. John Bale, an Associate Dean for the School of Medicine, whom she thought would pass them to the new University President, Dr. Goldenberg. Mr. Bale is uncertain whether he passed the documents to Dr. Goldenberg.

After Ms. Timm forwarded the documents to Mr. Bale, she alleges that Ms. Gibbs began treating her in a hostile manner. Specifically, Ms. Timm alleges that Ms. Gibbs mocked her for suffering from depression and criticized her ability to communicate with other employees.

The working relationship between Ms. Timm and Ms. Gibbs grew worse after Ms. Timm hired a graduate student with whom she used to work to complete a computer project for the University. Ms. Gibbs alleges that she told Ms. Timm not to hire her. After Ms. Gibbs learned that Ms. Timm entered into a contract with the graduate student, and that the media had inquired about the contract, Ms. Gibbs reprimanded Ms. Timm and directed her to cancel the contract.

Another disagreement developed between Ms. Timm and Ms. Gibbs after Ms. Timm unilaterally implemented a University charge-card system across the campus. Ms. Gibbs alleges that she warned Ms. Timm not to implement the system unilaterally because of the technical problems that it would likely cause. Despite this alleged warning, Ms. Timm implemented the system unilaterally and technical problems occurred.

In September 1998, Ms. Timm filed a Notification Form with the University stating that she suffered from a mental or social disorder. She claims comments that Ms. Gibbs made in the office, such as "this is insane," exacerbated her disorder. Throughout the months that followed, Ms. Timm

states that Ms. Gibbs demeaned her and excluded her from certain meetings she had previously attended.

In October 1998, the school's business-and-finance-department staff, which included both Ms. Timm and Ms. Gibbs, participated in an annual retreat. At this retreat, Ms. Gibbs alleges that a number of senior staff members voiced their concern about Ms. Timm's performance at work. Ms. Gibbs also states that during the retreat, Ms. Timm was defensive and uncooperative.

Throughout November 1998, Ms. Timm alleges that Ms. Gibbs demeaned her through e-mail messages and through their personal contact with one another. At one point in November, Ms. Timm gave Ms. Gibbs a news clipping about bullying in the workplace. Ms. Gibbs reports that she met with Ms. Timm in November and advised her that many of the staff in their department had voiced concerns about working with her.

A business department meeting was scheduled for December 2, 1998. In the weeks leading up to this meeting, Ms. Timm states that she feared that Ms. Gibbs would humiliate her in front of her co-workers. Just days before the meeting, Ms. Timm contacted Dr. Moore, the University Provost, in an unsuccessful attempt to have him intervene and stop the meeting. On November 29, Ms. Timm sent an e-mail to Ms. Gibbs restating her grievances and informing her that she would seek an attorney's advice if the situation did not improve.

On December 3, 1998, Ms. Timm received her notice of termination from the University and was escorted off the campus. When Ms. Timm retrieved her personal items on January 15, 1999, she alleges that some of her files were missing and that some had been copied. In addition, her computer's hard drive had been removed.

Ms. Gibbs reports that she decided to terminate Ms. Timm in November 1998 based on four incidents of "gross insubordination" and the "unhealthy environment" she created in the office. The four incidents Ms. Gibbs recounted were:

(1) inviting candidates for the auditor position to a party after Ms. Gibbs specifically told her not to invite them;

(2) disclosing to Ms. Gibbs the candidate she and Dr. Lightle thought was most qualified for the auditor position after Ms. Gibbs told her not to tell her their preference;

(3) entering into a contract with a graduate student to complete a University computer project after Ms. Gibbs warned her not to contract with her; and

(4) implementing a charge-card system unilaterally across the campus after Ms. Gibbs told her to implement it in a piecemeal fashion.

App. 436-38.

Ms. Timm's amended complaint alleged eight causes of action, including violations of the First Amendment, Rehabilitation Act, Equal Protection Clause, and various Ohio state laws. The district court granted summary judgment on defendants' motion on all claims. Ms. Timm appealed the judgment of the First Amendment, Rehabilitation Act, and Equal Protection Clause claims.

II.

We review a grant of summary judgment *de novo*. *Barnhart v. Pickrel, Schaeffer and Ebeling Co. L.P.A.*, 12 F.3d 1382, 1388 (6th Cir. 1993). Summary judgment is proper when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A court considering a summary judgment motion considers the facts in a light most favorable to the

nonmoving party and draws all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III.

Ms. Timm first alleges that the district court erred in granting summary judgment in favor of defendants on her First Amendment claim. To establish a prima facie claim for retaliation in violation of the First Amendment's free-speech guarantee, Ms. Timm must show: (1) she was engaged in a constitutionally protected activity; (2) defendant's adverse action caused her to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights. *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998).

According to Ms. Timm, the University terminated her employment because she spoke out about the expenses related to President Flack's death. She argues that the roughly eight months that passed between the date she spoke out about the expenses and her termination establishes a sufficient temporal nexus to conclude that the University was retaliating against her. Ms. Timm also argues that the district court did not consider other evidence she presented and that it failed to consider this evidence in a light most favorable to her.

We find no merit to Ms. Timm's argument. Eight months is a long period of time for an employer to wait to retaliate against an employee with a termination notice, and the evidence Ms. Timm presented does not change our perspective in this case. Moreover, we believe the reasons Ms. Gibbs offered in support of her decision to terminate Ms. Timm justify the action taken by the University. For these reasons, we find no genuine issue of material fact and, therefore, affirm the judgment of the district court on this claim.

### IV.

Ms. Timm's second argument is that the district court erred in granting summary judgment in favor of defendants on her Rehabilitation Act claim. "'[I]f the plaintiff has direct evidence that the employer relied on his or her disability in making an adverse employment decision,' the plaintiff must prove that he or she is 'disabled.'" *DiCarlo v. Potter*, 358 F.3d 408, 418 (6th Cir. 2004), quoting *Monette v. Elec. Data Sys. Corp.,* 90 F.3d 1173, 1186 (6th Cir.1996). However,

> if the plaintiff seeks to establish his or her case indirectly, without direct proof of discrimination, the plaintiff may establish a *prima facie* case of discrimination by showing that: 1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced.

*Dicarlo*, 358 F.3d at 418, quoting *Monette,* 90 F.3d at 1186.

Ms. Timm alleges that the district court did not consider all of the evidence she presented in support of her claim. To support her claim, she argues that she was excluded from meetings, chastised for entering into a contract with a former colleague, and lied to about alleged criticisms from her coworkers. However, other than the Notification Form she filed with the University stating that she suffered from a mental or social disorder, she did not present any evidence indicating that she is actually disabled. "To be 'disabled' for the . . . Rehabilitation Act, an individual must (1) have a physical or mental impairment which 'substantially limits' him or her in at least one 'major life activity,' (2) have a record of such an impairment, or (3) be regarded as having such an impairment." *DiCarlo*, 358 F.3d at 418 (citations omitted). Major life activities include "'functions such as

caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.'" *Mahon v. Crowell*, 295 F.3d 585, 589 (6th Cir. 2002), quoting 45 C.F.R. § 84.3(j)(2)(ii). In addition, Ms. Timm presented no evidence that indicated how the University could accommodate her disability, if she indeed suffers from one, or any of the other necessary elements of the claim.

We find no evidence that establishes a genuine issue of material fact as to Ms. Timm's Rehabilitation Act claim. Thus, we affirm the district court's judgment on this claim.

## V.

The last issue Ms. Timm raises is that the district court erred in granting summary judgment in favor of defendants on her Equal Protection Clause claim. "To succeed on a § 1983 claim of this kind, against a public employer for an equal protection violation, the plaintiff must show that the employer made an adverse employment decision 'with a discriminatory intent and purpose.'" *Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 614 (6th Cir. 2003), quoting *Boger v. Wayne Cty.,* 950 F.2d 316, 324-25 (6th Cir.1991).

Ms. Timm alleges that "outbursts" from Ms. Gibbs, which consisted of twice stating "this is insane" in response to various decisions made by Ms. Timm, as well as Ms. Gibbs asking Ms. Timm if she was on medication, suggesting that she work on her listening skills and visit a psychologist, all amount to evidence of mistreatment. She alleges that this supports an inference of ad hoc actions prompted by class-based discriminatory animus.

As we stated previously, Ms. Timm presented no evidence that she actually suffers from a disability. Therefore, we find no merit to her argument that she is entitled to class-based protection. Although Ms. Timm cites *Thomas v. Gee*, 850 F. Supp. 665 (S.D. Ohio 1994) and *Williams v. Ohio Dep't of Mental Health*, 960 F. Supp. 1276 (S.D. Ohio 1997), to

support her claim, neither case presents a set of facts similar to her case. Moreover, neither of these cases nor her argument presents any evidence to establish that Ms. Timm was discriminated against or was treated differently than other similarly situated non-protected employees. Therefore, we conclude that Ms. Timm failed to meet her burden of establishing a *prima facie* claim under the Equal Protection Clause. The judgment of the district court on this claim is affirmed.

For the reasons stated herein, we AFFIRM the judgment of the district court in its entirety.