**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0488n.06
Filed: July 13, 2006

No. 03-3213

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| MARC E. BACON et al., | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| and | ) | |
| | ) | **ON APPEAL** FROM THE |
| SHERMAN MANUEL, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| **Plaintiff-Appellant,** | ) | DISTRICT OF OHIO |
| | ) | |
| v. | ) | |
| | ) | **OPINION** |
| HONDA OF AMERICA | ) | |
| MANUFACTURING, INC., | ) | |
| | ) | |
| **Defendant-Appellee.** | ) | |
| | ) | |

Before: BOGGS, MOORE, and COOK, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** This case involves the appeal of the district

court's dismissal pursuant to a motion for summary judgment of claims of race discrimination in

promotion decisions and retaliation made by Sherman Manuel, Plaintiff-Appellant, against his

former employer, Honda of America Manufacturing, Inc. ("Honda"), Defendant-Appellee, under

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2.[1] For the following reasons, we

**AFFIRM** the district court's grant of summary judgment to Honda.

_____

[1]Manuel raised claims under 42 U.S.C. § 1981 and Ohio law in the district court; he makes
no mention of these claims in his briefs to this court, and thus he has forfeited them.

## I. FACTS AND PROCEDURE

### A. Background

Honda hired Manuel in 1986 as a result of a settlement with the Equal Employment Opportunity Commission ("EEOC") after an investigation of racial discrimination. Plaintiff began his employment with Honda as a production associate at the Marysville Auto Plant. In 1991, Manuel was promoted to staff administrator, a level three non-production exempt position. In 1993 and 1994, Manuel's supervisor, Alan Shaw, gave Manuel an overall performance rating of "exceeds expectations," the second-highest rating, and an overall capability rating of "proficient," the highest rating, in 1994. In 1995, Tim Garrett, Manuel's new supervisor, gave Manuel an overall performance rating of "achieves expectations," one rating below "exceeds expectations," and an overall capability rating of "competent," one rating below proficient.

In 1995, Manuel complained to several Honda vice presidents that Honda was discriminating against blacks in promotions by downgrading their evaluations. In late 1995 or early 1996, Manuel transferred to an associate relations position at the East Liberty Plant but was then transferred to an administration position at the Marysville Plant. In 1996, Garrett gave Manuel an overall performance rating of "satisfactory," one level below "achieves expectations," and the second-lowest rating, and an overall capability rating of "acceptable," the second-lowest rating.

In 1997, under a new supervisor, Susan Boggs, Manuel was given a performance rating of "achieves expectations" and a capability rating of "very strong." In 1998, Boggs found Manuel's capability to be "very strong" and his performance to be "positive," the second-lowest of four ratings.[2] In May 1998, Manuel met with Garrett to discuss his disagreement with his 1996

---

[2]Overall performance ratings were changed that year.

evaluation, but it was not changed. In 1999, Mike Stratton, Manuel's next supervisor, gave Manuel a rating of "positive," but also identified the rating as "P1," which was the lowest evaluation an employee could receive within the "positive" rating.

In August 1999, Manuel received a manager's-level counseling ("counseling") for "unprofessional and improper conduct" primarily as a result of failing to follow the instructions of Stratton and Boggs to support his team's decision regarding the selection of a vendor, a decision with which Manuel disagreed. Joint Appendix ("J.A.") at 1231-32 (Disciplinary Counseling). In November 1999, Manuel was placed on a performance improvement plan ("PIP") for lack of planning and analytical skills; inability to use management tools, evaluate problems, or develop countermeasures; inattention to details; and late and inadequate projects. On June 2, 2000, Manuel was given his next evaluation from Stratton, on which he received a performance rating of "improvement required."

In June or July 2000, Honda Vice President Kim Smalley suggested to Paul Gelacek, manager of organizational development, that Manuel be transferred to organizational development and mentioned "legal concerns" to Gelacek. J.A. at 2205-07 (Gelacek Dep. at 41-43). Within organizational development, Manuel was assigned a variety of tasks, including developing new materials for a coaching course, developing diversity training materials, managing visual workplace management, organizing the corporate library, coordinating the education fair, and working on team leader orientation.

In February 2001, Manuel received another counseling for deceptive and insubordinate behavior, including misleading his supervisors regarding the progress of his work, interfering with a staffing decision over which he had no authority, and failing to follow his supervisors' directions

3

regarding his work duties. At this time, Manuel was also placed on another PIP for "fail[ing] to perform any of his responsibilities," including coaching, team leader orientation, the corporate library, visual workplace management, and the education fair, which caused the organizational development group to fall behind on deadlines and spend additional money. J.A. at 2210 (Gelacek Dep. at 119). Manuel disputes the basis for these disciplinary actions. On May 21, 2001, Honda terminated Manuel due to his inability to perform his job functions.

## B. Procedural History

Manuel filed his first charge of discrimination with the Ohio Civil Rights Commission ("OCRC") on March 14, 1996, but he took no further action regarding this charge. On August 19, 1999, several plaintiffs brought an employment discrimination suit against Honda alleging individual and class claims.[3] On May 24, 2000, Manuel filed a charge of discrimination with the OCRC alleging race discrimination in promotion decisions and retaliation. On July 19, 2000, Manuel was added as a plaintiff to the suit filed in August 1999. On July 10, 2001, Manuel filed another charge of discrimination with the OCRC regarding the February 2001 PIP and his termination. Honda moved for summary judgment on each of the plaintiffs' claims; the district court granted Honda's motions as to each plaintiff and dismissed the action. Manuel filed this timely appeal.[4]

---

[3]These plaintiffs moved for class certification. On March 7, 2001, the district court denied this motion, and we affirmed that decision, *Bacon v. Honda of Am. Mfg.*, 370 F.3d 565 (6th Cir. 2004), *cert. denied*, 543 U.S. 1151 (2005).

[4]In the district court, the case was styled *Marc E. Bacon, et al. v. Honda of America Mfg., Inc.*, No. 2:99-cv-803. Although several of the other plaintiffs appealed the grant of summary judgment to Honda on their claims, because Manuel was the only plaintiff to pursue his appeal to completion, the case caption has been modified.

4

## II. ANALYSIS

### A. Standard of Review

We review de novo a grant of summary judgment. *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In reviewing a grant of summary judgment, all the facts and the inferences drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B. Administrative Filings and the Scope of the Case

We now turn to questions regarding the administrative filing requirement for Title VII claims that determine the scope of the adverse actions that we may consider as part of Manuel's case. First, we address the district court's dismissal of Manuel's claims of adverse actions taken after May 24, 2000, including his February 2001 counseling and PIP and his May 2001 termination, due to Manuel's failure to present any evidence that he filed a charge of discrimination with either the OCRC or the EEOC related to these adverse actions. Despite the fact that Honda presented no objection on this ground, the district court dismissed these claims *sua sponte* because we have previously held that a plaintiff's failure to exhaust administrative remedies on any Title VII claims leaves the district court without subject-matter jurisdiction to address these unexhausted claims. *See Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 379 (6th Cir. 2002). The Supreme Court's recent decision in *Arbaugh v. Y & H Corp.*, 546 U.S. --- , 126 S. Ct. 1235 (2006), holding that Title VII's fifteen-employee definition of an "employer" was not a jurisdictional requirement, may require

5

reconsideration of our precedent that administrative exhaustion is a jurisdictional matter rather than an element of a Title VII claim. *Compare id.* at 1245 (explaining that when Congress does not clearly require a particular element to be a precondition to jurisdiction, that element will be deemed nonjurisdictional), 42 U.S.C. § 2000e-5(f)(3) (granting federal jurisdiction for Title VII claims without mentioning administrative exhaustion as a jurisdictional prerequisite), *and In re James*, 444 F.3d 643, 647-48 (D.C. Cir. 2006) (citing *Arbaugh* to support the proposition that administrative exhaustion is not a jurisdictional element for Title VII claims), *with* 42 U.S.C. § 2000e-5(f)(1) (explaining that a civil action can be brought by an aggrieved party within ninety days of receipt of a right-to-sue letter from the EEOC).

We need not decide this question in the present case, however, because pursuant to FED. R. APP. P. 10(e)(2)(C), Manuel moved to supplement the record to include his July 10, 2001 charge of discrimination with the OCRC and his July 7, 2002 right-to-sue letter from the EEOC. These documents establish that Manuel did indeed administratively exhaust these later claims of discrimination. Honda did not object to this motion, and, in fact, Honda's fact sheet for Title VII appeals in its brief to this court acknowledges that Bacon filed a charge of discrimination on July 10, 2001. Moreover, both parties fully briefed Manuel's claims regarding these later adverse actions in the court below, negating any prejudice to Honda that might otherwise result from such a delayed amendment to the record. Therefore, we grant Manuel's motion to supplement the record and will consider these later adverse employment actions.

Second, we note that Manuel's Title VII claims only cover discrete acts of discrimination that occurred within the 300-day period prior to the filing of his charge of discrimination on May

6

24, 2000 and the 300-day period prior to the filing of his July 10, 2001 charge.[5]  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113-15 (2002).  This means that discrete discriminatory acts that occurred outside the periods of July 28, 1999 to May 24, 2000 and September 14, 2000 to July 10, 2001 can be used as "background evidence in support of a timely claim," but are not actionable in themselves.  *Id.*

## C.  Title VII's Burden-Shifting Analysis

Both Title VII retaliation and promotion claims based on circumstantial evidence are analyzed under the *McDonnell Douglas* burden-shifting framework.[6]  *DiCarlo*, 358 F.3d at 414-15, 420; *Anthony v. BTR Auto. Sealing Sys., Inc.*, 339 F.3d 506, 514-15 (6th Cir. 2003).  Once the plaintiff has made out a prima facie case of discrimination or retaliation, the burden shifts to the defendant to demonstrate a legitimate, nondiscriminatory reason for the adverse employment action.  *DiCarlo*, 358 F.3d at 420; *Anthony*, 339 F.3d at 515.  If the defendant produces such a reason, the

---

[5]The period is 300 days (as opposed to 180 days) where the plaintiff first initiates discrimination proceedings with a state or local agency.  42 U.S.C. § 2000e-5(e)(1).  Manuel also filed a charge of discrimination with the OCRC on March 14, 1996.  Because Manuel took no action after receiving his right-to-sue letter on this charge, Manuel cannot now raise Title VII claims that he would have otherwise been able to bring pursuant to that charge.  *See* 42 U.S.C. § 2000e-5(f)(1) (stating that an individual must file suit within ninety days of receiving a right-to-sue letter); *Peete v. Am. Standard Graphic*, 885 F.2d 331, 331-32 (6th Cir. 1989) (same).

[6]Manuel argues that plaintiffs raising intentional discrimination claims based on circumstantial evidence are not limited to following the *McDonnell Douglas* framework to defeat a defendant's summary judgment motion, but rather may also produce other direct or circumstantial evidence that the adverse actions taken against them were a result of discrimination to allow their case to proceed to trial.  We need not decide the merits of this argument because, as explained below, we either hold or assume that Manuel has met the prima facie case on each of his claims, and thus our decision to affirm the dismissal of Manuel's claims turns not on the burden-shifting *McDonnell Douglas* framework, but on his failure to show pretext, which "merges with the ultimate burden of persuading the court that []he has been the victim of intentional discrimination."  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 516-17 (1993) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

7

plaintiff then assumes the burden of showing that the defendant's reasons were merely a pretext for discrimination or retaliation. *DiCarlo*, 358 F.3d at 420; *Anthony*, 339 F.3d at 515.

## D. Title VII Retaliation

### 1. Prima Facie Case

To establish a prima facie case of retaliation under Title VII, a plaintiff must show by a preponderance of the evidence that "1) plaintiff engaged in activity protected by Title VII; 2) plaintiff's exercise of [such protected activity] was known by the defendant; 3) that, thereafter, the defendant took an employment action adverse to the plaintiff; and 4) that there was a causal connection between the protected activity and the adverse employment action." *DiCarlo*, 358 F.3d at 420 (internal quotation marks omitted).

Manuel has met the first element of engaging in activity protected by Title VII. To support a retaliation claim, the opposed practice need not actually violate Title VII; rather, the employee must have "reasonably believe[d it] to be a violation of Title VII." *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579 (6th Cir.), *cert. denied*, 531 U.S. 1052 (2000). Manuel expressed opposition to Honda's alleged glass ceiling to his superiors, including several Honda vice presidents, in 1995 and 1996, and filed several charges of discrimination.

To satisfy the second element, the plaintiff must show that "individuals charged with taking the adverse employment action knew of the protected activity." *Mulhall v. Ashcroft*, 287 F.3d 543, 551-52 (6th Cir. 2002). Manuel has presented sufficient evidence to create a genuine issue of material fact as to this element with regard to Smalley and Gelacek because Manuel has shown that Smalley expressed "legal concerns" regarding Manuel to Gelacek. J.A. at 2205-06 (Gelacek Dep. at 41-42). Although Gelacek denies knowledge of the "nature of the legal concerns," *id.*, the "legal

8

concerns" remark constitutes sufficient evidence to create a question of fact as to whether Smalley and Gelacek knew of Manuel's protected activity. Therefore, reading the facts in the light most favorable to Manuel, as we are bound to do, Manuel has satisfied this element with regard to Smalley and Gelacek. Gelacek initiated Manuel's February 2001 counseling, and Smalley and Gelacek were both involved in the decisions to put Manuel on a PIP in February 2001 and to terminate him. However, neither Smalley nor Gelacek were involved with the earlier performance evaluations completed by Stratton of which Manuel complains. Honda has presented evidence that Stratton did not know of Manuel's protected activity, and Manuel has failed to raise an issue of fact on this question. Therefore, Manuel has not satisfied this element with regard to Stratton.

Manuel indicates that the retaliatory actions taken against him include: denials of a promotion, the termination, the counselings, the PIPs, and frequent changes in his assignments.[7] Denials of promotion and terminations constitute adverse employment actions. *Anthony*, 339 F.3d at 515; *Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir. 1999). Manuel's other alleged adverse actions, however, do not, on their own, generally qualify as adverse employment actions. *See Agnew v. BASF Corp.*, 286 F.3d 307, 310 (6th Cir. 2002) (holding that criticism in performance reviews and performance improvement plans do not alone constitute intolerable working conditions to support a claim for constructive discharge); *Primes v. Reno*, 190 F.3d 765, 767 (6th Cir. 1999) (holding that negative evaluations, without more, do not constitute adverse employment actions).

---

[7]Manuel also alleges that Honda retaliated against him by downgrading his evaluations. Only one of the evaluations of which Manuel complains falls within the 300-day statutory period. We need not evaluate whether this allegedly downgraded evaluation would constitute an adverse employment action because it was completed by Stratton, and Manuel has not shown that Stratton had knowledge of his protected activity. Moreover, this evaluation, although given to Manuel on June 2, 2000, was signed by Stratton on May 24, 2000, the same day Manuel filed his charge of discrimination, and thus could not have been downgraded in response to the charge.

An adverse employment action "'must be more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Hollins*, 188 F.3d at 662 (quoting *Crady v. Liberty Nat'l Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir. 1993)). It "'might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or *other indices that might be unique to a particular situation*.'" *Id.* (emphasis added) (quoting *Crady*, 993 F.2d at 136). In this case, because both Manuel's February 2001 counseling, which was done at the direction of Gelacek, and February 2001 PIP, which was directed by Smalley and Gelacek, formed part of the basis for his termination, they could be considered adverse employment actions.

The evidence that Manuel has presented to satisfy a causal connection, the fourth element of his prima facie case of retaliation, is the comment that Smalley made to Gelacek in June or July 2000 regarding "legal concerns" related to Manuel, and the temporal proximity between his protected activity and the adverse actions.

Several of the adverse actions of which Manuel complains — the August 1999 counseling, the September 1999 promotion to manager of East Liberty Plant administration given to Henry Real,[8] and the November 1999 PIP — were taken prior to Manuel's filing of his May 24, 2000 discrimination charge and the "legal concerns" comment, and thus cannot be considered in connection with those events. These adverse actions instead could only be considered in retaliation for his complaints to Honda management in 1995 and his charge of discrimination filed in 1996. Although in certain circumstances, a temporal connection between the protected activity and the

_____

[8]This is the only promotion denied to Manuel that is not time barred. The other promotions of which Manuel complains occurred in 1998, well over 300 days prior to the filing of his May 24, 2000 discrimination charge.

adverse decision can satisfy the fourth element's causal connection requirement, *Mulhall*, 287 F.3d at 551, these adverse actions were taken approximately three to four years after Manuel complained to superiors and filed his first discrimination charge. This lengthy gap between the protected activity and these adverse actions is insufficient to establish a causal nexus. *See Timm v. Wright State Univ.*, 375 F.3d 418, 423 (6th Cir. 2004); *Hafford v. Seidner*, 183 F.3d 506, 515 (6th Cir. 1999).

The "legal concerns" comment, which was made in the context of a conversation between Smalley and Gelacek regarding Manuel's transfer to work under Gelacek's supervision, could, however, be connected with later adverse actions, including the February 2001 counseling and PIP and the termination. Smalley shared Honda's "legal concerns" related to Manuel with Gelacek as part of the information that he thought relevant to Manuel's employment, and thus an inference could be drawn that such "legal concerns" motivated Honda's treatment of Manuel. Manuel also claims that the timing of the discipline and his termination supports a showing of causal connection. *See DiCarlo*, 358 F.3d at 421; *Nguyen v. City of Cleveland*, 229 F.3d 559, 567 (6th Cir. 2000). In this case, temporal proximity should be measured from the time of the "legal concerns" comment rather than the time of the protected activity — the filing of the charge of discrimination on May 24, 2000 — because that is the first indication that the relevant decisionmakers knew of the protected activity. Manuel's counseling and placement on a PIP in February 2001 occurred seven months after the "legal concerns" comment, and his termination on May 25, 2001 occurred ten months after the comment. Although this temporal connection is weak, the comment about "legal concerns" suffices for Manuel to present a prima facie case of retaliation.

11

## 2. Legitimate, Nondiscriminatory Reason

Honda has provided a legitimate, nondiscriminatory reason for the alleged adverse actions taken against Manuel. Essentially, Honda asserts that Manuel's poor performance led to his evaluations, counselings, and PIPs and justifies Honda's decision not to promote him.

## 3. Pretext

A plaintiff can show that an employer's proffered nondiscriminatory reason is pretextual by showing, "by a preponderance of the evidence[,] either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate his discharge, or (3) that they were insufficient to motivate discharge." *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994) (emphasis and internal quotation marks omitted). Poor performance would justify the actions that Honda took with regards to Manuel. Manuel disputes that his performance was poor. However, Manuel's view of his performance cannot demonstrate pretext if Honda "reasonabl[y] reli[ed] on the particularized facts that were before it at the time the [adverse] decision[s] w[ere] made." *Smith v. Chrysler Corp.*, 155 F.3d 799, 806-07 (6th Cir. 1998). This court has previously held that an employee's view of his own satisfactory performance cannot establish pretext where the employer reasonably relied on specific facts before it indicating that the employee's performance was poor. *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1116-17 (6th Cir. 2001). Under *Majewski*, Manuel's "disagreement with [Honda]'s honest business judgment regarding his work does not create sufficient evidence of pretext in the face of the substantial evidence that [Honda] had a reasonable basis to be dissatisfied." *Id.* at 1116. Despite the fact that Manuel has presented evidence to support his adequate performance in a few areas for which he was responsible, this does not negate Honda's evidence that Manuel's overall performance

12

was sufficiently deficient to justify the February 2001 counseling and PIP and Manuel's ultimate termination.

Honda has presented evidence that Manuel engaged in deceitful conduct by claiming that he had completed his responsibility for developing coaching materials when he had not; that Manuel disregarded his supervisor's orders by having his materials printed in contravention of his supervisor's instruction; and that Manuel failed to cooperate with a consultant with whom he was working. This conduct led to the February 2001 counseling. Manuel has not presented any evidence to dispute the basis for this counseling. Honda has presented evidence that Manuel's completely inadequate performance of his primary duties in organizational development, including developing a cultural diversity training course for mid-level management and developing materials for a course on coaching, led to his placement on the February 2001 PIP. Although Manuel disputes Honda's evaluation of his performance on these tasks, he has presented no evidence that he developed the materials requested of him. Presumably, Manuel could have sought these written materials through discovery, and his failure to present this evidence of his adequate performance of one of his primary job duties severely undermines his attempt to prove pretext. Honda has presented evidence that Manuel was terminated because of his extremely poor performance, as demonstrated by his "improvement required" ratings, his two counselings, and his failure to improve his performance under the February 2001 PIP. Although Manuel disputes Honda's evaluation of his performance on some of his duties, he does not refute the bases of his counselings, and he has not presented evidence to undermine Honda's evidence that it based its judgment regarding his poor performance on the particularized facts before it. *See Majewski*, 274 F.3d at 1116. Therefore, Manuel cannot show that Honda's legitimate, nondiscriminatory reason for his discipline and termination were

13

pretextual, and the district court correctly granted Honda's motion for summary judgment on

Manuel's retaliation claim.[9]

### E. Title VII Race Discrimination Based on Failure to Promote

#### 1. Statute of Limitations

The only promotion denied to Manuel that was not time barred was the September 1999

promotion of Real to manager of East Liberty Plant administration.

#### 2. Prima Facie Case

A plaintiff alleging that she was denied a promotion in violation of Title VII must first

present a prima facie case, which requires showing "(1) she is a member of a protected class; (2) she

applied for and was qualified for a promotion; (3) she was considered for and was denied the

promotion; and (4) an individual of similar qualifications who was not a member of the protected

class received the job at the time plaintiff's request for the promotion was denied." *White v.*

*Columbus Metro. Housing Auth.*, 429 F.3d 232, 240-41 (6th Cir. 2005) (citing *Nguyen v. City of*

---

[9]Manuel correctly argues that a plaintiff can present evidence of pretext by showing that he or she was treated less favorably than other employees who were not members of a protected group, even if the plaintiff is not similarly situated to these employees. *See Johnson v. Kroger Co.*, 319 F.3d 858, 869 (6th Cir. 2003) (holding that "differential treatment" of employees, even where the favored employees were not similarly situated to the plaintiff, "permit[ted] an inference that" discrimination led to the adverse employment decision). Manuel asserts in his supplemental declaration that Honda treated some of his coworkers differently than it treated him with respect to some of the tasks he was assigned. Honda argues that Manuel's supplemental declaration should not be considered because it is not based on personal knowledge as required by FED. R. CIV. P. 56(e). The assertions Manuel makes in his supplemental declaration are based on his "observation" and "experiences," J.A. at 2052 (Manuel Supp. Decl.¶ 3), which constitute personal knowledge, and therefore we will consider this evidence. Manuel's vague assertions regarding his performance and treatment vis-a-vis his coworkers do not salvage his retaliation claim, however, because Manuel has not presented evidence to refute the basis of his counselings or his other performance problems documented by Honda, each of which alone could justify the disciplinary actions and his termination, and thus this evidence is insufficient to undermine Honda's legitimate, nondiscriminatory reason for Manuel's discipline and termination — his poor performance.

*Cleveland*, 229 F.3d 559, 562-63 (6th Cir. 2000) (explaining why *Nguyen* is "the governing precedent," and rejecting later alternative formulations).

Manuel, an African-American, is a member of a protected class. Because Manuel has put forth evidence that there was no formal application process nor job posting for position of manager of East Liberty Plant administration, Manuel need not show that he applied for the position to make out a prima facie case. *See Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1022 (6th Cir. 2000). Although Honda has presented evidence that Manuel "was not considered for the promotion" due to his performance ratings and counseling, this does not prevent Manuel from making out a prima facie case because a plaintiff does not have to satisfy the "considered" prong where the exception to the application requirement applies. *Id*.

Manuel does not identify the specific qualifications required for this position. In his supplemental declaration, he asserts that "promotions [at Honda] are almost totally subjective, and are based on the personal views of managers and supervisors," and that "Honda does not advise associates of the criteria they apply with respect to each promotion at the Level IV," the level of the relevant promotion. J.A. at 2052, 2057 (Manuel Supp. Decl.¶¶ 3, 12). Assuming that this would suffice to show that Manuel could meet the qualifications for manager of East Liberty Plant administration, *see Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 575-76 (6th Cir. 2003) (en banc) (holding that the assessment of qualifications at the prima facie stage includes only "*objective qualifications*"), and that Manuel and Real have similar qualifications, *see White*, 429 F.3d at 243 n.6 (holding that the "similar qualifications" inquiry focuses on whether the employees have met the employer's objective qualifications and is "not the sort of close comparison that might include consideration of the employer's evaluation of subjective traits or other details about why the non-

15

protected person was in fact selected over the plaintiff"), Manuel cannot defeat summary judgment on his promotion claim because he cannot show that Honda's legitimate, nondiscriminatory reason was pretextual.

Honda explains that it promoted Real rather than Manuel because Real had more education and experience and that his performance was superior. Honda also cites Real's "knowledge of [Honda] policies and practices, leadership ability, and planning, organizational, communication, project management, problem solving, financial analysis, and personal management skills," as reasons for Honda's selection of Real for the promotion. J.A. at 685 (Boggs Aff. at ¶ 33). Real has a bachelor's degree in marketing and management and had in large part already taken on the role of manager of East Liberty Plant administration after the former manager left. Manuel does not have a college degree and did not have this same experience. Manuel's performance ratings were lower than Real's performance ratings, and Manuel had just received a counseling. These are legitimate reasons for Honda's selection of Real over Manuel, and Manuel has failed to present any evidence to indicate that they are mere pretext. Manuel contends that his counseling was unjustified because he claims he did not disclose confidential information. The basis for the counseling, however, was Manuel's expression of disapproval of his team's choice of an outside vendor made in direct contravention of his supervisor's direction to support the decision, and this he does not deny. Although Manuel also disputes the grounds of his performance evaluation, Honda's "reasonable reliance on the particularized facts before it" regarding Manuel's performance, including his lack of project management skills and his failure to improve his skills according to the development plan provided to him, are sufficient to support Honda's evaluation of Manuel and the decision not to promote him. *See Smith*, 155 F.3d at 806-07.

16

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment granting Honda's motion for summary judgment on each of Manuel's claims.