**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 14a0777n.06**

No. 14-5313

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
Oct 14, 2014
DEBORAH S. HUNT, Clerk

SUZANNE E. BRADLEY,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　**Plaintiff-Appellant,**　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　　　)　　ON APPEAL FROM THE UNITED
　　　　　　　　　　　　　　　　　　　　)　　STATES DISTRICT COURT FOR THE
WAL-MART STORES EAST, LP,　　　　　　　)　　MIDDLE DISTRICT OF TENNESSEE
　　　　　　　　　　　　　　　　　　　　)
　　　**Defendant-Appellee.**　　　　　　　)
＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿)

**BEFORE:　MOORE and COOK, Circuit Judges; STEEH, District Judge.**[*]

**STEEH, District Judge.**　Plaintiff Suzanne E. Bradley appeals from the United States District Court for the Middle District of Tennessee's grant of summary judgment in favor of defendant Wal-Mart Stores East, LP.　Bradley brought this negligence action arising from a slip and fall at a Wal-Mart store.　The district court found that Bradley failed to advance evidence to support her theory that Wal-Mart had constructive knowledge of the dangerous condition that caused her to fall.　On appeal, Bradley argues the district court erred in finding no genuine issue of material fact, improperly weighing evidence, and failing to draw inferences in her favor as the nonmoving party.　Because Bradley did not support her theory of liability with evidence creating any genuine issue of

---

[*]The Honorable George Caram Steeh, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

material fact to be resolved by a jury, we **AFFIRM** the district court's grant of summary judgment for Wal-Mart.

## I.  BACKGROUND

### A.  Factual Background

On May 4, 2011, while shopping at Wal-Mart's store in Lawrenceburg, Tennessee, plaintiff Suzanne Bradley slipped and fell in a puddle of what is speculated to be "chicken juice."  The incident took place at 1:45 p.m. in an area of the store referred to as "Action Alley," the busy open area near the front of the store just behind the checkout lines.  Four photographs were taken of the floor after Bradley fell and show the presence of a liquid on the floor.

Bradley described the liquid as "sticky" and said that it did not look like "a drink or water."  Wal-Mart's employees who observed the liquid immediately after Bradley fell believed it to be "chicken juice," referring to the liquid that is present in a package of raw chicken.  Neither the type of liquid nor its source was ever positively identified through testing or otherwise.

Bradley's statement was taken after the incident and she identified the location of her slip and fall as the checkout line for register # 5.  Melissa Weathers was the Zone Manager who responded to the scene after the fall.  She identified the location of Ms. Bradley's fall as near register # 5 in Action Alley, "close to the four-way."  A "four-way" is a kiosk displaying merchandise for sale, and the four-way at issue was located in the middle of Action Alley between register #5 and the "candy wall."  Ms. Weathers testified that the liquid on the floor was on the far side of the four-way in relation to register #5, between the four-way and the candy wall.  Jeremy Rhodes, the Asset Protection Manager at the time of the incident, testified that, based on what was reported to him by those at the scene, Ms. Bradley's fall was approximately 15 feet away from register #5.

2

There are no witnesses to how the liquid came to be on the floor. Both parties suggest that the liquid most likely dripped out of a package of raw chicken being purchased by another customer who checked out at register #5 at some point before Bradley fell. The record of cash register receipts for register #5 shows that ten customers purchased raw chicken at that register in the two hours before the incident. The last chicken purchase made at register #5 prior to Bradley's fall was at 1:25 p.m. Ms. Weathers testified that there are twenty cash registers in Action Alley, but there is no evidence in the record about chicken purchases made at the other nineteen registers in the time leading up to the incident.

The area of the fall was cleaned by Wal-Mart's maintenance employees at approximately 12:00 pm. on the day in question. The employees are trained to conduct safety sweeps on an ongoing basis, and to promptly address potentially dangerous conditions. Typically, three customer service managers monitor Action Alley area at all times, with one of the managers having responsibility for the area just behind the cash registers. Action Alley is videotaped in the regular course of business, but the exact spot where Bradley fell was not within the field of view of any of Wal-Mart's surveillance cameras. Mr. Rhodes attested in his affidavit that his review of the video surveillance footage did not show any Wal-Mart employees in the area near Bradley's fall in the twenty minutes preceding her fall.

It is undisputed that there is no evidence that any Wal-Mart employee caused the liquid to be on the floor or that any employee actually knew that the liquid was on the floor prior to Ms. Bradley's fall.

3

**B. Procedural Background**

The parties consented to have a magistrate judge preside over the case pursuant to 28 U.S.C. § 636(c) and Rule 73(b) of the Federal Rules of Civil Procedure. Wal-Mart filed a motion for summary judgment, supporting memorandum, and concise statement of material facts, alleging that Ms. Bradley could not meet her burden of proof because there was insufficient evidence to prove creation, actual notice, or constructive notice. Bradley filed a response in opposition to the motion for summary judgment, a memorandum in support, a response to Wal-Mart's concise statement of material facts, and her own concise statement of additional material facts. In these responsive documents, Bradley does not allege that Wal-Mart caused or created the dangerous condition, or that it had actual notice of the condition. Rather, Bradley takes the position that Wal-Mart had constructive notice of the chicken juice on the floor for at least twenty minutes prior to her fall.

On February 18, 2014, the district court granted Wal-Mart's motion for summary judgment. The court acknowledged that the evidence was sufficient for a jury to reasonably conclude that the substance Bradley slipped on was chicken juice, therefore a jury could reasonably infer that the only plausible explanation as to how the chicken juice came to be on the floor is that it leaked from a package of raw chicken. However, the court held there was no conclusive evidence about where the liquid came from or how long it was present on the floor prior to Bradley's fall. The court found that it was "unsupported speculation" to conclude that the liquid Bradley slipped on came from a customer who went through checkout line #5, as opposed to a customer who passed by that spot in Action Alley on his or her way to another checkout line or to another area of the store altogether.

4

The court considered the speculative nature of the evidence of how long the chicken juice had been on the floor, and the affirmative evidence of Wal-Mart's practice of regularly checking the floors of its store. Relying on case law finding no constructive notice due to a dearth of evidence of when and how a dangerous condition came about, the court concluded the evidence in this case could not support a finding of constructive notice and granted Wal-Mart's motion for summary judgment.

Ms. Bradley filed this appeal on March 17, 2014.

## II. STANDARD OF REVIEW

We review de novo an order granting summary judgment. *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004). Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact." *Mosholder v. Barnhardt*, 679 F.3d 443, 448-49 (6th Cir. 2012) (citation omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to defeat a properly supported motion for summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 449 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). "In reviewing the district court's decision to grant summary judgment, we must view all evidence in the light most favorable to the nonmoving party." *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007).

5

### III. ANALYSIS

**A. No Genuine Issue of Material Fact**

A properly supported motion for summary judgment will not be defeated by conclusory allegations, speculation and unsubstantiated assertions. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). The nonmoving party must come forth with evidence from which a jury can reasonably find in his or her favor in order to survive a motion for summary judgment.

Under Tennessee law, merchants owe customers a duty "to exercise reasonable care to keep the premises in a reasonably safe and suitable condition, including the duty of removing or warning against a dangerous condition traceable to persons for whom the proprietor is not responsible . . . if the circumstances of time and place are such that by the exercise of reasonable care the proprietor should have become aware of such conditions." *Self v. Wal-Mart Stores, Inc.*, 885 F.2d 336, 338 (6th Cir. 1989) (citations omitted). Bradley acknowledges that Wal-Mart did not create the dangerous condition, nor did it have actual knowledge of the condition. Bradley's theory of liability is predicated on constructive knowledge by Wal-Mart: the liquid on the floor was a dangerous condition that existed for such length of time that Wal-Mart, in the exercise of ordinary care, should have known of its existence. *See Hardesty v. Serv. Merch. Co., Inc.*, 953 S.W.2d 678, 682-83 (Tenn. Ct. App. 1997).

The genuine issues of material fact asserted by Bradley in support of her constructive notice theory are the source of the liquid - chicken juice from a package of raw chicken purchased at register #5 - and the length of time the spill had been on the ground before she fell - at least twenty minutes. As evidence of both issues, Bradley relies on the cash register receipts produced by Wal-

6

Mart for register #5 for the two hours preceding her fall. Asset Protection Manager Rhodes pulled the receipts for register #5 to assist in trying to identify the source of the spill. The mere fact that Wal-Mart retrieved and reviewed transaction receipts for the register closest to Bradley's fall is not an admission by Wal-Mart that the spill came from raw chicken purchased by a specific customer at register #5. Rather, the court must look at the evidence to determine whether it supports the theory of the nonmoving party.

Where the spill and the fall occurred fifteen feet away from cash register #5, in the busy Action Alley, on the far side of a four-way kiosk, more evidence is needed for a reasonable finder of fact to conclude that the source of the spill was from an item necessarily purchased at cash register #5. The location of the spill alone does not support such a finding. If ten people bought chicken from register #5, and there are twenty registers in Action Alley, then by extrapolation there were arguably two hundred customers carrying raw chicken through Action Alley in the two hours before the incident. For that matter, it is equally as likely that the source of the spill came from the cart of a shopper who was traversing the store through Action Alley, and had not even purchased the chicken prior to Bradley's fall. The evidence in this case does not support a reasonable inference as to the source of the liquid.

Where liability is based on constructive knowledge by defendant, the proof must also show that the dangerous or defective condition existed for such a length of time that the defendant knew, or in the exercise of ordinary care should have known, of its existence. *Hardesty*, 953 S.W.2d at 682. "As a general rule, constructive knowledge cannot be established without some showing of the length of time the dangerous condition had existed." *Id*. (citing *Self*, 885 F.2d at 338). However,

7

the evidence presented by Bradley does not support her theory that the chicken juice had been on the floor for at least twenty minutes before she fell.

The burden of proof was on Bradley to rebut Wal-Mart's well-supported motion for summary judgment demonstrating no genuine issue of material fact for trial. As such, the district court did not err in determining that there was no genuine issue of material fact such that Bradley should survive Wal-Mart's motion for summary judgment.

**B. Court did not Improperly Weigh Evidence or Fail to Draw All Inferences in Favor of Bradley**

Bradley argues that the district court failed to view the evidence in the light most favorable to her. In this argument, Bradley focuses on Wal-Mart's surveillance videos which were destroyed after thirty days pursuant to its normal business practice. Bradley maintains that Wal-Mart should not be able to present Mr. Rhodes' recollections of his review of the videos, and that she is further entitled to an adverse inference in her favor regarding what the videos show.

The testimony that Bradley objects to comes from Rhodes' deposition where he explains that before they were destroyed, he viewed the videos, which did not capture the exact area where Bradley fell. Rhodes testified that he did not see any Wal-Mart employees in the surrounding area that was captured on the surveillance videos. Importantly, Rhodes' testimony about not seeing any sales associates in the area of the incident does not support a material fact as it is not relevant to Bradley's constructive notice theory of liability. Bradley acknowledged that there is no evidence that Wal-Mart had actual notice of the spill before she fell. Therefore, we do not need to address Bradley's spoliation arguments regarding the videotapes.

Bradley's final argument is that the district court improperly weighed the evidence, not giving proper weight to Wal-Mart's "admission" that the chicken juice spilled from a package of

chicken while a customer checked out at register #5 twenty minutes prior to Bradley's fall. As previously discussed, the court deals with evidence, not conclusory allegations, speculation and unsubstantiated assertions. *See Lujan*, 497 U.S. at 888. We agree with the district court that "[i]t would be pure conjecture for the jury to conclude that the spilled chicken juice can be linked to any one of these specific customers and, thus, that the chicken juice had been present on the floor for any specific period of time."

## IV.  CONCLUSION

Bradley failed to support her negligence claim with substantial evidence from which a jury could reasonably find that Wal-Mart had constructive knowledge of a dangerous condition on its premises. Therefore, the district court's order granting Wal-Mart's motion for summary judgment is AFFIRMED.