[Cite as *Hambuechen v. 221 Market N., Inc.*, 2016-Ohio-3156.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| ANA M. HAMBUECHEN | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Appellee | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2015CA00161 |
| 221 MARKET NORTH, INC. DBA | : |  |
| NAPOLI'S ITALIAN EATERY | : |  |
|  | : | O P I N I O N |
| Appellant |  |  |

CHARACTER OF PROCEEDING: Civil appeal from the Stark County Court of
Common Pleas, Case No. 2012CV03644

JUDGMENT: Affirmed

DATE OF JUDGMENT ENTRY: May 23, 2016

APPEARANCES:

For Appellee Ana Hambuechen          For Appellant

TODD EVANS                           STANLEY RUBIN
4505 Stephen Circle, Ste. 101        437 Market Avenue North
Canton, OH 44718                     Canton, OH  44702

For Appellee Ohio Civil Rights Commission

WAYNE D. WILLIAMS
State Office Building, 11th Floor
615 W. Superior Ave.
Cleveland, OH 44113-1899

*Gwin, P.J.*

{¶1}   Appellant appeals the August 14, 2015 judgment entry of the Stark County Court of Common Pleas sustaining and enforcing the determination of the Ohio Civil Rights Commission.

*Facts & Procedural History*

{¶2}   On March 15, 2007, appellee Ana Hambuechen ("Hambuechen") filed a charge affidavit with appellee Ohio Civil Rights Commission ("Commission") alleging her employment by appellant, 221 Market North, Inc., d.b.a. Napoli's Italian Eatery ("Napoli's"), had been unlawfully terminated because she became pregnant.   The Commission investigated the complaint and, on July 19, 2007, found probable cause existed that an unlawful employment practice had occurred in violation of R.C. 4112.02(A).   The Commission tried to resolve the issue through the informal means of conference, conciliation, and persuasion; however, no resolution could be reached through these informal methods.

{¶3}   On September 13, 2007, the Commission filed a complaint and notice of hearing, requesting a finding that appellant violated R.C. 4112.02(A).   Appellant filed an answer on October 31, 2007.   The matter proceeded to a trial before an administrative law judge ("ALJ") on November 19, 2008.

{¶4}   At the hearing, Hambuechen testified she was hired as a server with Napoli's and started on August 3, 2006, making about $400 per week.   When she applied for the job, she had just been released from prison, but previously had experience as a server.   She had been convicted three times for drug offenses.   Hambuechen testified

she told the supervisors who hired her, Patty DeChellis ("DeChellis") and Louis Karoue ("Karoue"), she had just been released from prison.

{¶5} Hambuechen testified she got along with DeChellis and socialized with her outside of work several times. In mid-September of 2006, Hambuechen went out with DeChellis and her son.

{¶6} There were no written disciplinary actions against Hambuechen from DeChellis or Karoue. While Karoue never verbally reprimanded her, DeChellis yelled at her towards the end of her employment at Napoli's. Hambuechen testified she was never disciplined for how she treated a customer or for using her cell phone, was never disciplined for not having a check for a customer order, and never gave food away.

{¶7} Hambuechen found out she was pregnant in late October or early November of 2006. At the end of November, Hambuechen told DeChellis she was pregnant. Hambuechen testified after DeChellis found out she was pregnant, things changed, as DeChellis had a completely different attitude toward Hambuechen and picked on her. DeChellis also stopped talking to Hambuechen and hanging out with her after work. When DeChellis talked to Hambuechen about her attitude, Hambuechen stated DeChellis told her the pregnancy "wouldn't save her." After this conversation, Hambuechen was terminated by DeChellis two weeks later. Hambuechen testified when DeChellis called to terminate her, DeChellis told Hambuechen she was a troublemaker and "don't bring your pregnant ass back here." Hambuechen stated she told DeChellis "Fuck you" and hung up the phone.

{¶8} Hambuechen testified Phillip DeChellis, ("Phillip") the owner of Napoli's, called her and said he would talk to DeChellis. He then told Hambuechen he could not give her the job back because DeChellis would quit.

{¶9} On cross-examination, Hambuechen testified she was released from prison on July 26, 2006 and applied at Napoli's on August 2, 2006. Hambuechen stated Karoue told her only to fill out the part of the application with her name, address, and one reference, so she did not fill out the rest. Hambuechen testified she told DeChellis and Karoue she had been in prison and had a problem with drugs in the past.

{¶10} As to the conversation with DeChellis two weeks prior to her termination, Hambuechen stated the conversation took place after the restaurant closed. DeChellis told her to pay more attention to the customers and her "pregnancy would not save her." During this conversation, Hambuechen told DeChellis that DeChellis' son, Michael, was the father of her child. Hambuechen testified she was discharged at least in part because her pregnancy and the other portion of her discharge was due to the fact that DeChellis' son was the father of her baby.

{¶11} Angela Price ("Price") was a cook at Napoli's from August 2006 to February 2007 and worked with Hambuechen. Price stated Hambuechen got along with DeChellis until DeChellis found out Hambuechen was pregnant. Price testified DeChellis found out Hambuechen was pregnant shortly before she was fired. Price heard DeChellis say that Hambuechen was not pregnant and it was not her son Michael's baby. Further, Price testified she heard DeChellis say Hambuechen was trouble and DeChellis was going to get rid of her.

{¶12} Price stated that while DeChellis was in Price's presence approximately one to two weeks before Hambuechen was terminated, DeChellis stated she was going to fire Hambuechen for being pregnant. Price further testified that after DeChellis fired Hambuechen, Michael told Phillip that DeChellis "really screwed up." According to Price, Phillip asked DeChellis why she fired Hambuechen and told DeChellis, "you can't fire her because she is pregnant."

{¶13} On cross-examination, Price testified she was terminated in February of 2007 for not showing up to work on Superbowl Sunday. Price confirmed DeChellis stated Hambuechen was not pregnant at all and then subsequently said she was firing her because she was pregnant. Price testified there was no specific rule about cell phone use at Napoli's. Price saw Hambuechen using her cell phone while on duty, but not while she was in the dining room.

{¶14} DeChellis testified she is a manager at Napoli's and is responsible for hiring and firing employees. Karoue gave her Hambuechen's application. DeChellis stated Hambuechen did not tell her she was in prison; rather, she told DeChellis she had never been in trouble before. DeChellis stated had she known about Hambuechen's past, she would have investigated further and would have been concerned about hiring someone with a history of drug convictions. After Hambuechen was hired, DeChellis found out she had past felony convictions; however, DeChellis felt bad because Hambuechen said she was trying to get her life back together. DeChellis confirmed she terminated three employees who worked for Napoli's starting in August of 2006, one for talking on a cell phone and one for giving food to her children.

{¶15} DeChellis stated Hambuechen's job performance was so-so and she had a tendency not to take care of the customers well. Karoue told DeChellis that Hambuechen answered her cell phone while waiting on a customer. DeChellis testified the policy at the restaurant was absolutely no cell phones while on duty and Hambuechen did not comply with this policy. DeChellis stated she warned and reprimanded Hambuechen a few times about her cell phone in September; however, there was no discussion about terminating her then.

{¶16} DeChellis testified Hambuechen went to an employee and told the employee DeChellis was going to fire them. Further, Hambuechen told Price about a conversation DeChellis had with Phillip even when DeChellis told Hambuechen she would handle it. DeChellis told Hambuechen after this she was not going to tolerate any more incidents. DeChellis also believed Hambuechen was giving food away to her lawyer and her family. DeChellis stated Karoue wanted to terminate Hambuechen due to the cell phone incident. DeChellis testified she started reprimanding Hambuechen for poor work performance in September of 2006.

{¶17} DeChellis stated she did not have a replacement lined up for Hambuechen and her firing had nothing to do with her being pregnant. DeChellis did know Hambuechen was pregnant at the time she terminated her, as Hambuechen told DeChellis approximately one week prior. DeChellis testified she told Hambuechen her son was a grown man, it was his responsibility, and the pregnancy had nothing to do with her job performance. DeChellis testified, "I said if you're telling me this because you think this is going to save your job, I said this is not going to save your job; your pregnancy has nothing to do with your job performance." DeChellis stated firing Hambuechen had

nothing to do with the fact that Hambuechen claimed her son Michael was the father of the baby.

{¶18} DeChellis testified Hambuechen was not terminated when she spoke on her cell phone, was not terminated when she gave away food, was not terminated when DeChellis found out about her criminal convictions, and was not terminated after customer complaints. DeChellis stated Hambuechen's termination was for an "accumulation of things," including being insubordinate.

{¶19} Michael testified he had a sexual relationship with Hambuechen. Hambuechen told him in October of 2006 she was pregnant and he did not know whether to believe her. He does not think he is the father of the child and has never been served with paternity papers.

{¶20} Karoue supervised the dining room. He does not remember if he told Hambuechen to fill out the whole job application, but did not tell her not to fill out the whole application. Karoue testified Hambuechen told him she had no police record. Karoue stated management told him she was not putting everything on checks. Karoue wanted to fire Hambuechen once, but Phillip told him no. Karoue did not know Hambuechen was pregnant.

{¶21} Christine White, an employee at Napoli's in August of 2006, testified Hambuechen was mouthy and rude to DeChellis.

{¶22} Phillip testified DeChellis and Karoue came to him several times about Hambuechen's job performance and missing tickets, so he put her employment on a trial basis. Hambuechen called him to tell him DeChellis fired her. He told Hambuechen he would have to talk to DeChellis, but he never talked to Hambuechen again and did not

offer her the job back. Phillip did not believe Hambuechen was pregnant and did not believe it was his son's child. Phillip testified he had no role in terminating Hambuechen.

{¶23} On January 24, 2009, the hearing transcript was provided to the parties and briefing commenced. The Commission filed its post-hearing brief on January 7, 2010. Appellant filed its post-hearing brief on January 27, 2010.

{¶24} Over two years later, on April 2, 2012, the ALJ issued her report and recommendation. No reason was given for the lengthy delay. The ALJ found the Commission established a prima facie case of sex and/or pregnancy discrimination with credible evidence that: (1) DeChellis was aware Hambuechen was pregnant on or around November 25, 2006; (2) Hambuechen was qualified for her position as server; and (3) DeChellis became aware Hambuechen was pregnant on November 25, 2006 and Hambuechen was discharged on November 30, 2006. The ALJ found the close temporal proximity between Hambuechen informing DeChellis of her pregnancy and her subsequent discharge was sufficient evidence to give rise to an inference of discrimination.

{¶25} The ALJ found appellant met its burden of production to articulate some legitimate, non-discriminatory reason for the discharge with evidence Hambuechen was discharged due to poor performance. The ALJ then went on to determine whether the Commission showed, by a preponderance of the evidence, that appellant's articulated reason for Hambuechen's discharge was not the true reason for discharge, but was a pretext for discrimination.

{¶26} The ALJ concluded the Commission introduced evidence challenging the credibility of appellant's reason for termination including the following: DeChellis

socialized with Hambuechen and Price after work; DeChellis terminated three employees who worked for Napoli's starting in August of 2006 for similar types of behavior; and though DeChellis testified she started reprimanding Hambuechen for poor work performance in September of 2006, she did not terminate Hambuechen until one week after Hambuechen told DeChellis she was pregnant. The ALJ found Price's testimony credible that she overheard DeChellis state she was going to terminate Hambuechen because of her pregnancy and that she heard Phillip say DeChellis couldn't fire her because of her pregnancy. The ALJ disbelieved the underlying reason appellant articulated for Hambuechen's discharge and concluded that, more likely than not, the reasons were a pretext for pregnancy discrimination.

{¶27} The ALJ found the action constitutes discrimination on the basis of sex and recommended the Commission find the employer had violated the law by firing Hambuechen. The ALJ further recommended the following: the Commission order appellant to cease and desist from all discriminatory practices in violation of R.C. 4112; the Commission order appellant to make an offer of employment to Hambuechen of server; and the Commission order appellant to pay Hambuechen back pay at the amount she would have earned had she been employed as a server as of December 6, 2006 and until the offer of employment, less interim earnings.

{¶28} Appellant filed objections to the ALJ's report and recommendations on April 9, 2012. The Commission adopted the ALJ's recommendation and, on November 15, 2012, issued a final order adopting the ALJ's report.

{¶29} On November 26, 2012, appellant filed a petition for judicial review pursuant to R.C. 4112.06 with the Stark County Court of Common Pleas, arguing the Commission's

order was contrary to law, was an abuse of discretion, and was not supported by reliable and probative evidence. The Commission filed a motion to dismiss on December 28, 2012, contending appellant failed to initiate service on the parties through the Clerk of Courts within thirty (30) days. The trial court granted the Commission's motion to dismiss on February 19, 2013.

{¶30} Appellant appealed the trial court's February 2013 judgment entry to this Court. In *Hambuechen v. 221 Market North, Inc.*, 5th Dist. Stark No. 2013CA00044, 2013-Ohio-3717, we reversed the decision of the trial court and found the trial court erred in dismissing appellant's petition for judicial review on the basis that service of the petition was not obtained through the Clerk of Courts within thirty (30) days. The Ohio Supreme Court affirmed the judgment in *Hambuechen v. 221 Market North, Inc.*, 143 Ohio St.3d 161, 2015-Ohio-756, 35 N.E.3d 502, and remanded the case to the Stark County Court of Common Pleas.

{¶31} When the case was returned to the trial court, the parties filed briefs. The trial court issued a judgment entry on August 14, 2015. The trial court found the ALJ's decision was supported by reliable, probative, and substantial evidence, and sustained and enforced the determination of the Commission.

{¶32} Appellant appeals the August 14, 2015 judgment entry of the Stark County Court of Common Pleas and assigns the following as error:

{¶33} "I. THE TRIAL COURT ERRED IN FINDING THAT THERE WAS RELIABLE, PROBATIVE, AND SUBSTANTIAL EVIDENCE THAT NAPOLI'S REASON FOR TERMINATING HAMBUECHEN WAS PRETEXTUAL."

*Standard of Review*

{¶34} In order to affirm a finding of discrimination under R.C. 4112.02(A), the trial court must find the Commission's finding is supported by reliable, probative, and substantial evidence in the record to support the decision. R.C. 4112.06(E); *Plumbers & Steamfitters Joint Apprentice Comm. v. Ohio Civil Rights Comm.*, 66 Ohio St.2d 192, 421 N.E.2d 128 (1981). In the context of an employment discrimination case pursuant to R.C. 4112, reliable, probative, and substantial evidence means evidence sufficient to support a finding of discrimination under Title VII. *Id.* The trial court must give deference to the administrative agency's resolution of the evidentiary conflicts because the commission has the opportunity to observe the demeanor of the witnesses and weigh their credibility. *Id.*; *University of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 407 N.E.2d 1265 (1980).

{¶35} Our review of the trial court's judgment is more limited. We may reverse a determination of the court of common pleas only upon a showing that the court of common pleas abused its discretion. *Ohio Civil Rights Comm. v. Case Western Reserve University*, 76 Ohio St.3d 168, 1996 WL 405204 (July 31, 1996). "The role of the appellate court is to determine whether the trial court abused its discretion in its consideration of the evidence involving an administrative appeal." *Id.* Abuse of discretion involves more than an error of judgment; it connotes an attitude on the part of the court that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

I.

{¶36} Ohio Revised Code Section 4112.02(A), like Title VII of the Civil Rights Act of 1974, prohibits an employer from discriminating against an employee because of the

employee's sex. This includes discrimination on the basis of "pregnancy, any illness arising out of and occurring during the course of pregnancy, childbirth, or related medical conditions." R.C. 4112.01(B). The Ohio Supreme Court has held that "federal case law interpreting Title VII * * * is generally applicable to cases alleging violations of R.C. Chapter 4112." *Plumbers & Steamfitters Joint Apprentice Comm. v. Ohio Civil Rights Comm.*, 66 Ohio St.2d 192, 421 N.E.2d 128 (1981).

{¶37} Claims under the Pregnancy Discrimination Act when a plaintiff chooses to proceed by circumstantial evidence are analyzed under the evidentiary framework established in *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To sustain a claim, as a threshold matter, a plaintiff must satisfy the elements of a prima facie case by showing: (1) she was pregnant; (2) she was qualified for her job; (3) she was subjected to an adverse employment decision; and (4) there is a nexus between her pregnancy and the adverse employment decision. *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651 (6th Cir. 2000). The burden in establishing a prima facie case in making a claim "is not onerous" and poses a "burden easily met." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Wrenn v. Gould*, 808 F.2d 493 (6th Cir. 1987). The prima facie phase "merely serves to raise a rebuttable presumption of discrimination by eliminating the most common nondiscriminatory reasons for the employer's termination of the plaintiff." *Hollins v. Atlantic Co., Inc.*, 188 F.3d 652 (6th Cir. 1999).

{¶38} In this case, we find the trial court did not abuse its discretion in finding there was reliable, probative, and substantial evidence Hambuechen established a prima facie case of discrimination. Hambuechen was pregnant at the time of her discharge,

possessed the basic skills required to be a server, and was otherwise qualified for the job. Further, her discharge was an adverse employment action.

**{¶39}** Hambuechen also put forth some credible evidence enabling the factfinder ALJ to deduce there was a nexus between her pregnancy and her discharge as Hambuechen told DeChellis she was pregnant at the end of November (on or about November 25th) and Hambuechen was discharged within a week or two after DeChellis learned about the pregnancy. See *Asmo v. Keane, Inc.*, 471 F.3d 588 (6th Cir. 2007) (finding prima facie nexus factor met when employer discharged employee within two months of learning of her pregnancy); *DiCarlo v. Potter*, 358 F.3d 408 (6th Cir. 2004) (stating proximity nexus in a prima facie case has been found in short periods of time, usually less than six months and finding twenty-one days is a short enough period of time for temporal proximity).

**{¶40}** If a plaintiff successfully establishes her prima facie case of pregnancy discrimination, the burden of production shifts to the defendant-employer to articulate a legitimate, non-discriminatory reason for its actions. *Id.* If the employer fails to satisfy this burden, the plaintiff prevails. *Id.* If the employer satisfies this burden, then the presumption of intentional discrimination arising from the prima facie case is negated, making it incumbent on the plaintiff to rebut the articulated reason by showing it is not credible and is a mere pretext for discrimination. *Id.*

**{¶41}** In the instant case, the ALJ found appellant articulated a legitimate, non-discriminatory reason for its actions. Thus, Hambuechen must show, by a preponderance of the evidence, appellant's reason is not credible and is a pretext for discrimination. In order to show pretext, Hambuechen may directly or indirectly challenge the credibility of

appellant's articulated reasons for discharging her.  *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).  Hambuechen can directly show pretext by "offering evidence that the employer's proferred reason had no basis in fact, did not actually motivate its decision, or was never used in the past to discharge an employee."  *Asmo v. Keane, Inc.*, 471 F.3d 588 (6th Cir. 2007).  In *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 *1993), the Supreme Court held:

> The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination.  Thus, rejection of the defendant's proferred reasons, will permit the trier of fact to infer the ultimate fact of intentional discrimination * * * no additional proof of discrimination is required.

{¶42}  Thus, the "law allows a factfinder to infer intentional discrimination from proof of the prima facie case coupled with a disbelief of the proferred reason for the employer's action, but such an inference is not required."  *Id; E.E.O.C. v. Yenkin-Majestic Paint Corp.*, 112 F.3d 831 (6th Cir. 1997).

{¶43} Appellant argues the facts and evidence do not support the ALJ's conclusion that appellees introduced evidence challenging the credibility of appellant's reason for terminating Hambuechen and the trial court erred in finding there was reliable, probative, and substantial evidence to support the ALJ's determination.  We disagree with appellant.

**{¶44}** Appellant contends the ALJ and the trial court erred in crediting Price's testimony and in allegedly "straining" the interpretation of Price's testimony, especially in light of DeChellis' testimony. "It is universally accepted that the jury, or the trial court where there is no jury, is the sole judge of the credibility of witnesses and of what weight is to be given their testimony." *In re Disbarment of Lieberman*, 163 Ohio St. 35, 125 N.E.2d 328 (1955). An appellate court cannot substitute its judgment as to the credibility of the witness for that of the trier of fact. *Id.* Here, the ALJ was the trier of fact, and she determined Price's testimony was not inconsistent and was more credible than the other testimony presented. The trial court properly gave due deference to the ALJ's findings with regards to the credibility of the witnesses. See *El Grande Steak House v. Ohio Civil Rights Comm.*, 99 Ohio App.3d 557, 651 N.E.2d 440 (11th Dist. 1994).

**{¶45}** Appellant further argues it is unclear how DeChellis socializing with Price and Hambuechen early on in their employment is evidence of pretext. However, as noted by one court, the "most significant evidence of pretext is the boss' conduct" after the plaintiff announced her pregnancy. *Asmo v. Keane, Inc.*, 471 F.3d 588 (6th Cir. 2007). Here, the testimony regarding DeChellis socializing with Hambuechen was utilized to demonstrate DeChellis' change in behavior towards Hambuechen when she found out she was pregnant. Both Price and Hambuechen testified DeChellis' attitude toward Hambuechen changed when she began "nit picking" Hambuechen's work performance and stopped socializing with them after work. The evidence of DeChellis' socializing with Price and Hambuechen was thus used to demonstrate DeChellis' conduct before and after she found out Hambuechen was pregnant.

{¶46} Appellant contends the trial court erred in relying on the testimony regarding DeChellis firing other employees because they were not fired for the same thing Hambuechen was terminated for. We first note that while DeChellis testified she did not fire Hambuechen at the time the events occurred with regards to the cell phone usage and giving away food, DeChellis also testified Hambuechen's firing was due to "an accumulation of things" and not "a one-time thing."

{¶47} Additionally, the evidence regarding the other employees fired also highlights the suspicious timing of Hambuechen's termination. While the other employees were terminated for specific violations, DeChellis testified Hambuechen was a "so-so" server whom she had to verbally discipline for cell phone use, giving away food to family and friends, and who had other work performance issues beginning in September of 2006. However, in contrast to the other employees who were fired for cell phone use and giving away food, Hambuechen was not immediately terminated, and DeChellis did not terminate her for the alleged poor skills until after she found out Hambuechen was pregnant. The fact DeChellis did not terminate Hambuechen until she announced her pregnancy despite her alleged poor skills is additional evidence of pretext. *DeBoer v. Musashi Auto Parts, Inc.*, 124 Fed.Appx. 387 (6th Cir. 2005).

{¶48} Appellant finally argues R.C. 4112 does not put a per se ban on pregnancy termination and the ALJ's decision was a per se ban on pregnancy termination. We disagree. Appellees presented direct evidence, in the form of Price's testimony, of comments by Hambuechen's supervisor, DeChellis, which specifically related to the pregnancy and the decision to discharge Hambuechen. DeChellis was an individual with decision-making authority with respect to the decision to terminate Hambuechen. See

*DiCarlo v. Potter*, 358 F.3d 408 (6th Cir. 2003); *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344 (6th Cir. 1998). Appellees also presented other circumstantial evidence of pretext such as: the suspicious timing of Hambuechen's termination given DeChellis' testimony about her poor work performance and the negative change in DeChellis' behavior toward Hambuechen after learning about the pregnancy. The ALJ weighed this evidence and the demeanor of the witnesses. Accordingly, there was sufficient evidence for the ALJ to find the reason articulated by appellant was a pretext by a preponderance of the evidence.

{¶49} Upon review of the record, we find there was reliable, probative, and substantial evidence to support the ALJ's finding of discrimination based on pregnancy. Thus, the trial court did not abuse its discretion in its determination. Appellant's assignment of error is overruled and the August 14, 2015 judgment entry of the Stark County Court of Common Pleas is affirmed.

By Gwin, P.J.,

Hoffman, J., and

Delaney, J., concur